UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VERIDIAN CREDIT UNION, on behalf of itself and a class of similarly situated financial institutions

Plaintiff,

v.

EDDIE BAUER LLC,

Defendant.

CASE NO. 2: 17-cv-00356-JLR

**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ~~[PROPOSED]~~ ORDER**

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

## A. General Principles

1. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. The proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**B. ESI Disclosures**

Within 30 days after the Rule 26(f) conference, or at a later time if agreed to by the parties, each party shall disclose:

1. Custodians. A list of the custodians most likely to have discoverable ESI in their possession, custody or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under his/her control.

2. Non-custodial Data Sources. A list of non-custodial data sources (e.g. shared drives, servers, etc.), if any, likely to contain discoverable ESI.

3. Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (e.g. third-party email and/or mobile device providers, "cloud" storage, etc.) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

**C. Preservation of ESI**

The parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody or control.

2. All parties shall supplement their disclosures in accordance with Rule 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that

data is created after a disclosure or response is made (unless excluded under (C)(3) or (D)(1)-(2) below).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a. Deleted, slack, fragmented, or other data only accessible by forensics.

b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

e. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

f. Server, system or network logs.

g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

h. Electronic data (e.g. email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**D. Privilege**

1. With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

2. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

3. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection, if: (i) such information appears on its face to have been inadvertently produced or (ii) the producing party provides notice within 15 days of discovery by the producing party of the inadvertent production.

**E. ESI Discovery Procedures**

1. <u>On-site inspection of electronic media.</u> Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. <u>Search methodology.</u> The parties shall timely attempt to reach agreement on appropriate search terms, or an appropriate computer- or technology-aided methodology, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search terms or computer- or technology-aided methodology.

In the absence of agreement on appropriate search terms, or an appropriate computer- or technology-aided methodology, the following procedures shall apply:

a. A producing party shall disclose the search terms or queries, if any, and methodology that it proposes to use to locate ESI likely to contain discoverable information. The parties shall meet and confer to attempt to reach an agreement on the producing party's search terms and/or other methodology.

b. If search terms or queries are used to locate ESI likely to contain discoverable information, the parties will attempt agree upon an agreed-upon list of search terms of queries to be used in connection with electronic searches.

c. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided.

d. The producing party shall search both non-custodial data sources and ESI maintained by the custodians identified above.

3. <u>Format.</u> The parties agree that ESI will be produced to the requesting party with searchable text, in a format to be decided between the parties. Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file), group IV TIFFs imaged at 300 dpi. The document's original orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Bates numbers, confidentiality

designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder. (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files),and searchable PDF. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database and drawing files, should be produced in native format.

a. **Parent-Child Relationships**. The Parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege or work-product protection the relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child-document should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

b. Production Media. The preferred means of producing documents is via secure FTP or secure file share. However, documents may also be produced via CD, DVD, flash drive, or hard drive if (a) the size of the production exceeds the size limitations applicable to the producing party's secure FTP or file share or (b) if the interest of preserving the confidentiality of the information produced outweighs the speed and efficiency of producing documents via secure FTP or secure file share. To the extent possible, physical media should be write protected before it is produced.

c. Naming **Convention for Production Media**. Whether produced via secure FTP, file share, or physical media, the files produced should be combined into a compressed file such as .zip, .rar, etc. The compressed file should be named so as to indicate the

producing party, the date of the production, and the sequence of the production (e.g., "Wendys Production 20160801-001").

d. Dates. All documents shall be processed so as to show the date and time in a uniform time zone, i.e., Eastern Standard Time.

4. De-duplication. The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party. A producing party shall de-duplicate ESI horizontally (globally) across the population of records at the family level. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical. Emails retrieved from different storage locations (i.e. desktop vs laptop vs smart phone) shall not be considered unique based solely on the originating storage location.

The producing party shall identify all custodians who were in possession of a de-duplicated document in the "Other Custodian" metadata field specified in Appendix A. In the event of a rolling production of documents or ESI items, the producing party shall provide an overlay load file with updated Other Custodian along with each production.

The parties expressly agree that a document produced from one custodian's file but not produced from another custodian's file as a result of deduplication will nonetheless be deemed as if produced from that other custodian's file for purposes of deposition, interrogatory, request to admit and/or trial testimony.

5. Metadata fields. The parties agree to produce the following metadata fields: document type; custodian and additional/duplicate custodians; author/from; recipient/to, cc and bcc; title/subject; bates number begin, bates number end, attachment begin, attachment end, file name and size; original file path; date and time created, sent, modified and/or received; and hash value.

6. Meet and Confer Obligations. To the extent there is any issue or potential dispute

with respect to the provisions of this Order, or with the method(s) or manner(s) of the production of ESI, the parties shall meet and confer in attempt to resolve such issue or dispute prior to seeking judicial intervention.

DATED: August 24, 2017.

By: */s/ Kim D. Stephens*
Kim D. Stephens, WSBA #11984
kstephens@tousley.com

By: */s/ Chase C. Alvord*
Chase C. Alvord, WSBA #26080
calvord@tousley.com

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
Telephone: 206.682.5600
Fax: 206.682.2992

Joseph P. Guglielmo
SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com

Erin G. Comite
Stephen J. Teti
SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
ecomite@scott-scott.com
steti@scott-scott.com

DATED: August 24, 2017.

By: */s/ Kathleen A. Nelson*
Kathleen A. Nelson, WSBA No. 22826
kathleen.nelson@lewisbrisbois.com

By: */s/ Sarah E. Demaree*
Sarah E. Demaree, WSBA No. 49624
sarah.demaree@lewisbrisbois.com

By: */s/ Jon P. Kardassakis*
Jon P. Kardassakis, CSBA No. 90602
jon.kardassakis@lewisbrisbois.com

By: */s/ Dyanne J. Cho*
Dyanne J. Cho, CSBA No. 306190
dyanne.cho@lewisbrisbois.com

By: */s/ Gordon J. Calhoun*
Gordon J. Calhoun, CSBA No. 84509
gordon.calhoun@lewisbrisbois.com

LEWIS BRISBOIS BISGAARD & SMITH LLP
1111 Third Avenue, Suite 2700
Seattle, Washington 98101
Phone 206.436.2020
Fax 206.436.2030

*Attorneys for Defendant Eddie Bauer LLC*

Gary F. Lynch
CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP
1133 Penn Avenue, 5th floor
Pittsburg, PA 15212
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
glynch@carlsonlynch.com

Karen H. Riebel
Kate Baxter-Kauf
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
khriebel@locklaw.com
kmbaxter@locklaw.com

Arthur M. Murray
MURRAY LAW FIRM
650 Poydras St., Suite 2150
New Orleans, LA 70130
Telephone: (504) 525-8100
Facsimile: (504) 284-5249
amurray@murray-lawfirm.com

Brian C. Gudmundson
ZIMMERMAN REED, LLP
1100 IDS Center, 80 South 8th St.
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
brian.gudmundson@zimmreed.com

Bryan L. Bleichner
CHESTNUT CAMBRONNE PA
17 Washington Avenue North, Suite 300
Minneapolis, MN 55401
Telephone: (612) 339-7300
Facsimile: (612) 336-2921
bbleichner@chestnutcambronne.com

*Attorneys for Plaintiff Veridian Credit Union*

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED this 25th day of August, 2017.

The Honorable James L. Robart
UNITED STATES DISTRICT JUDGE

**ADDITIONAL PROVISIONS FOR MORE COMPLEX CASES**

In addition to the provisions set forth in the Model ESI Agreement above, parties may find the following provisions appropriate and useful in addressing more complicated ESI discovery issues. The complexity of ESI discovery varies from case to case and is not necessarily tied to the number or size of the parties or the amount in controversy. The additional provisions below are intended to assist parties in anticipating and addressing early on more complicated ESI discovery issues but may not be appropriate or necessary in every case. The following provisions are intended as suggested provisions from which parties may pick and choose, taking into consideration the needs of the particular case.

1. Search methodology.

Upon reasonable request and if appropriate for the particular case, a party shall also disclose information relating to network design, the types of databases, database dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.

2. Format.

a. Each document image file shall be named with a unique Bates Number (e.g. the unique Bates Number of the page of the document in question, followed by its file extension). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history. The parties shall produce their information in the following format: single- page images and associated multi-page text files containing extracted text or with appropriate software load files containing all requisite information for use with the document management system (e.g., Concordance® or Summation®), as agreed to by the parties.

b. If appropriate to the particular case, the parties shall consider whether or not the full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. If the parties so agree, the Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (e.g. the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

c. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

3. Metadata fields.

The parties are to confer and agree on whether metadata is to be produced or may be excluded from discovery. Metadata may not be relevant to the issues presented or, if relevant, may not be reasonably subject to discovery, or may be subject to cost- shifting, considering the factors set forth in Fed. R. Civ. P. 26(b)(2)(C). For example, if one party is producing only paper documents, and the other party is producing ESI, the parties should confer on whether the additional cost and burden of producing metadata by the party producing ESI is reasonable or should be shifted under the facts and circumstances of the case. If the parties agree to produce metadata, and unless otherwise agreed, each party shall produce the following metadata associated with ESI to the extent reasonably accessible: (a) the author(s) of the ESI; (b) the recipient(s) of the ESI; (c) the date the ESI was created; and (d) the source from which the ESI was produced. The "source" of ESI shall be the name of the person who was the custodian of the ESI or, if the name of a person is not available, the storage location (e.g., "Regulatory Shared Drive–Wayne, PA"). This information will be included in the "Author," "Recipient," "Date," and "Source" fields (respectively) for each document in the load file associated with the document images. Although it is presumed generally that the above list of metadata fields will be provided, the list of metadata fields is intended to be

flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor and business practices.

4. Hard-Copy Documents.

If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents shall include a cross-reference file that indicates document breaks and sets forth the Custodian or Source associated with each produced document. Hard-copy documents shall be scanned using Optical Character Recognition technology and searchable ASCII text files shall be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file shall be named with a unique Bates Number (e.g. the Unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

5. Privilege Log Based on Metadata.

The parties agree that privilege logs shall be provided 30 days after the date agreed upon for final production in this matter. The privilege log shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title and date created. Should the available metadata provide insufficient information for the purpose of evaluation the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure.

**APPENDIX 2**

The following metadata fields associated with each electronic document will be produced, where reasonably available:

| Field Name | Field Description | Email | Non-e-mail ESI | Hard Copies/Static Image files |
|---|---|---|---|---|
| Custodian | Name of custodian(s) or source of email(s) or file(s) produced | X | X | X |
| BegBates | Beginning Bates number (including Prefix) | X | X | X |
| EndBates | Ending Bates number (including Prefix) | X | X | X |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | X | X | X |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | X | X | X |
| Attachment Count | | X | | |
| Redacted | | X | X | |
| From | From field extracted from an email message | X | | |
| Author | Author field extracted from the metadata of a non-email document[1] | | X | |
| To | To or Recipient extracted from an email message | X | | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | X | | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | X | | |

[1] The parties recognize that the "author" field does not necessarily reflect the actual author of the document and that in many cases the information may not exist. No party is under the obligation to populate this field to the extent that it is not already populated.

| Field Name | Field Description | Email | Non-e-mail ESI | Hard Copies/Static Image files |
|---|---|---|---|---|
| Email Subject | Subject line extracted from an email message | X | | |
| Filename | Name of file as saved on system | | X | |
| Date Sent | Sent date of e-mail message | X | | |
| Time Sent | Sent time of e-mail message | X | | |
| Date Rcvd | Date e-mail message was received | X | | |
| Time Rcvd | Time e-mail message was received | X | | |
| Date and Time Last modified | The application recorded date and time on which the document was last modified | | X | |
| File Type | The type of document | | X | |
| Native Link (if natives are exchanged) | Relative path to any files produced in native format, such as Excel spreadsheets | | X | |
| Text Link (if text is exchanged) | Relative path to any OCR/extracted text files in the production set | X | X | X[2] |
| Hash Value | MD5 or SHA-1 hash value used to deduplicate the data | X | X | |
| Duplicate Custodian | When globally dedupuing, this field will list the other custodians within the production who possessed a copy of the file | X | X | |

2 *See* n.1.