UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VERIDIAN CREDIT UNION, | CASE NO. C17-0356JLR |
| Plaintiff, | |
| v. | ORDER ON DEFENDANT'S MOTION TO DISMISS |
| EDDIE BAUER, LLC, | |
| Defendant. | |

**INTRODUCTION**

Before the court is Defendant Eddie Bauer, LLC's ("Eddie Bauer") motion to dismiss (2d MTD (Dkt. # 40)) Plaintiff Veridian Credit Union's ("Veridian") first amended putative class action complaint (FAC (Dkt. # 36)).[1]  The court has considered Eddie Bauer's motion, Veridian's response (Resp. (Dkt. # 53)), Eddie Bauer's reply

//

---

[1] Veridan's motion for class certification is not due until April 25, 2018.  (10/17/17 Order (Dkt. # 66).)

(Reply (Dkt. # 57)), the relevant portions of the record, and the applicable law.  Being

fully advised,[2] the court GRANTS in part and DENIES in part Eddie Bauer's motion.

## BACKGROUND

Veridian alleges the following pertinent facts in its first amended complaint:[3]

Eddie Bauer is headquartered in Washington but operates approximately 370

stores throughout the United States.  (FAC ¶ 12.)  Eddie Bauer accepts credit and debit

cards for payment from customers at it point-of-sale ("POS") registers.  (*Id.* ¶ 17.)  In

January 2016, hackers accessed Eddie Bauer's POS systems and installed malicious

software (or "malware") that infected every Eddie Bauer store in the United States and

Canada ("the Data Breach").  (*Id.* ¶ 29.)  Through this malware, hackers stole credit and

---

[2] The parties have requested oral argument, but the court has thoroughly reviewed the parties' briefing and considers oral argument to be unnecessary.  The court, therefore, denies the parties' requests.  *See* Local Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").

[3] Eddie Bauer asks the court to take judicial notice of portions of Veridian's website. (*See* RFJN (Dkt. # 41); Nelson Decl. (Dkt. # 42) ¶ 2, Ex. 1 (attaching pages of Veridian's website).)  Veridian asks the court to deny Eddie Bauer's request because it "improperly offers facts, which are incomplete."  (Resp. at 8 n.10.)  In addition, Veridian offers a declaration of its senior legal counsel to counter facts asserted by Eddie Bauer based on the pages Eddie Bauer submits from Veridian's website.  (*See* Resp. at 5, 8 n.10, 28 (citing Slessor Decl. (Dkt. # 54).)

The court denies Eddie Bauer's request that it take judicial notice of certain pages from Veridian's website.  Although a court may consider materials that are properly the subject of judicial notice under Federal Rule of Evidence 201 on a motion to dismiss, *see Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001), pages from a party's website generally do not meet those standards, *see Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 763 (C.D. Cal. 2015) ("'[P]rivate corporate websites, particularly when describing their own business, generally are not the sorts of sources whose accuracy cannot reasonably be questioned.") (quoting *Victaulic Co. v. Tieman*, 499 F.3d 227, 237 (3d Cir. 2007) (internal quotation marks omitted).  The court also declines to consider the declaration offered by Veridian.  (*See* Slessor Decl.)  "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Lee*, 250 F.3d at 688 (internal quotation marks and citations omitted).  Veridian offers no exception to this general rule that would permit the court to consider its counsel's declaration (*see generally* Resp.), and accordingly the court declines to do so.

debit card data from Eddie Bauer's systems and sold it to other individuals who made

fraudulent transactions on those payment cards.  (*Id.* ¶¶ 7, 25, 29, 32, 35-36, 96-97.)

Veridan is an Iowa-chartered credit union with its principal place of business in

Iowa.  (FAC ¶ 11.)  Veridian issued payment cards compromised in the Data Breach and

alleges that it suffered significant property damage to the unique data included on the

payment cards (including the ruination of the payment card itself) and financial losses in

connection with covering its customers' losses due to the Data Breach and in reissuing

credit and debit cards to its customers.  (*Id.* ¶¶ 8, 22, 96-98, 135.)  Veridian alleges that

the Data Breach and Veridian's injury were the foreseeable results of Eddie Bauer's

inadequate data security measures, which Eddie Bauer knew were insufficient to protect

against recognized threats, and Eddie Bauer's refusal to implement industry-standard

security measures due to the cost of such measures.  (*Id.* ¶¶ 39-92.)

Veridian filed a putative class action complaint against Eddie Bauer on March 7,

2017.  (Compl. (Dkt. # 1).)  Eddie Bauer filed a motion to dismiss on April 21, 2017.

(MTD (Dkt. # 28).)  On June 5, 2017, instead of responding to Eddie Bauer's motion

directly, Veridian filed a first amended putative class action complaint.  (*See* FAC.)  On

June 15, 2017, Eddie Bauer filed a motion to dismiss Veridian's first amended complaint.

(*See* 2d MTD.)

In its first amended complaint, Veridian alleges claims against Eddie Bauer for (1)

negligence (FAC  ¶¶ 119-28), (2) negligence *per se* (*id.* ¶¶ 129-35), (3) declaratory and

injunctive relief (*id.* ¶¶ 136-43), (4) violation of RCW 19.255.020 (FAC ¶¶ 144-51), and

(5) violation of Washington's Consumer Protection Act ("CPA"), RCW ch. 19.86 (FAC

¶¶ 152-65).  Veridian alleges that Washington law applies to its claims.  (*Id.* ¶¶ 112-18.)

Eddie Bauer, however, asserts that Iowa law applies.  (2d MTD at 3-9.)

Veridan also brings its first amended complaint as a putative class action.  (*Id.* ¶¶ 99-111.)  Specifically, Veridian brings its action "individually and on behalf of all other financial institutions similarly situated" under Federal Rule of Civil Procedure 23. (*Id.* ¶ 99.)  Veridian defines its putative class as:

> All Financial Institutions − including, but not limited to, banks and credit unions − in the United States (including its Territories and the District of Columbia) that issue payment cards, including credit and debit cards, or perform, facilitate, or support card issuing services, whose customers made purchases from Eddie Bauer stores from January 1, 2016 to the present (the "Class").

(*Id.*)

The court now considers Eddie Bauer's motion to dismiss.

## ANALYSIS

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). Although "detailed factual allegations" are not required, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In other words, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the

1   defendant is liable for the misconduct alleged." *Id.*   Under Rule 12(b)(6), dismissal can

2   be based on "the lack of a cognizable legal theory or the absence of sufficient facts

3   alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d

4   696, 699 (9th Cir. 1990).

5          When considering a motion to dismiss under Rule 12(b)(6), the court construes the

6   complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v.*

7   *Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must therefore

8   accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's

9   favor.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.

10   1998).

11   **B.     Choice of Law**

12          The court first addresses which jurisdiction's law applies to Veriidan's claims.

13   Veridian asserts that Washington law governs its claims (FAC ¶¶ 112-18; Resp. at 6-8),

14   while Eddie Bauer argues for the application of Iowa law (2d MTD at 5-9).

15          A "federal court sitting in diversity ordinarily must follow the choice-of-law rules

16   of the State in which it sits." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of*

17   *Tex.*, --- U.S. --- , 134 S. Ct. 568, 582 (2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*,

18   313 U.S. 487, 494-96 (1941)).  "This applies to actions brought under the Class Action

19   Fairness Act [("CAFA"), 28 U.S.C. § 1332(d)(2),] as well, since CAFA is based upon

20   diversity jurisdiction." *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d

21   1155, 1167-68 (N.D. Cal. 2016) (quoting *In re NVIDIA GPU Litig.*, No. C 08-04312,

22   2009 WL 4020104, at *5 (N.D. Cal. Nov. 19, 2009)).  Here, Veridian asserts that the

court has original jurisdiction based on CAFA.  (FAC ¶ 13.)  Accordingly, the court

follows the choice-of-law rules of Washington.

Washington employs a two-step approach to choice of law questions.  Under

Washington's choice-of-law rules, the court first determines whether an actual conflict

exists between Washington and other applicable state law.  *See Burnside v. Simpson*

*Paper Co*., 864 P.2d 937, 941 (Wash. 1994).  In the absence of a conflict, Washington

law applies.  *See id.*; *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd*., 268 F.3d

829, 845 (9th Cir. 2001) (applying Washington law where no conflict was shown).  If an

actual conflict exists, the court then determines the forum that has the "most significant

relationship" to the action to determine the applicable law.  *See Johnson v. Spider Staging*

*Corp.*, 555 P.2d 997, 1000-01 (Wash. 1976).

1.  An Actual Conflict

"An 'actual conflict' exists 'between the laws or interests of Washington and the

laws or interests of another state' when the . . . states' laws could produce different

outcomes on the same legal issue."  *Kelley v. Microsoft Corp*., 251 F.R.D. 544, 550

(W.D. Wash. 2008) (quoting *Erwin v. Cotter Health Ctrs*., 167 P.3d 1112, 1120 (Wash.

2007)).  Veridian asserts in a summary fashion that only a false conflict exists between

the laws or interests of Washington and those of Iowa.  (*See* Resp. at 7.)  However, as

discussed below, the court is persuaded by Eddie Bauer's detailed analysis that an actual

conflict exists.  (*See* 2d MTD at 4-5.)  The court discusses each of Veridian's claims in

turn.

//

1

*a. Negligence*

2      The court first considers Veridian's negligence claim.  (FAC ¶¶ 119-28.)  In Iowa,

3 "[a]s a general proposition, the economic loss rule bars recovery in negligence when the

4 plaintiff has suffered only economic loss."  *Annett Holdings, Inc. v. Kum & Go, L.C.*, 801

5 N.W.2d 499, 503 (Iowa 2011) (citing *Neb. Innkeepers, Inc. v. Pittsburgh-Des Moines*

6 *Corp.*, 345 N.W.2d 124, 126 (Iowa 1984)).  Indeed, in Iowa, "[t]he well-established

7 general rule is that a plaintiff who has suffered only economic loss due to another's

8 negligence has not been injured in a manner which is legally cognizable or

9 compensable."  *Id.*  Further, in Iowa, the economic loss rule "is by no means limited to

10 the situation where the plaintiff and the defendant are in direct contractual privity."  *Id.* at

11 504.

12      The Washington Supreme Court, however, no longer applies the economic loss

13 rule but rather the "independent duty doctrine."  *See Affiliated FM Ins. Co. v. LTK*

14 *Consulting Servs., Inc.*, 243 P.3d 521, 526 (Wash. 2010).  In Washington, ""[t]he

15 independent duty doctrine . . . maintain[s] the boundary between torts and contract in the

16 place of the economic loss rule."  *Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*, 312

17 P.3d 620, 623 (Wash. 2013) (internal quotation marks omitted) (citing *Elcon Constr., Inc.*

18 *v. E. Wash. Univ.*, 273 P.3d 965, 969 (Wash. 2012)).  For example, under Washington's

19 independent duty doctrine, a plaintiff can bring a tort claim for conduct arising out of a

20 contractual relationship if the defendant owed him or her a duty of care independent of

21 the contract.  *Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1262 (Wash.

22 2010).

1    In addition, unlike Iowa, the independent duty doctrine is not a rule of general

2    application in Washington. *Elcon Constr.*, 273 P.3d at 969.  The Washington Supreme

3    Court has taken "great pains to limit" the doctrine and to "clarify that it does not bar tort

4    remedies except in fairly unusual circumstances." *Reading Hosp. v. Anglepoint Grp.,*

5    *Inc.*, No. C15-0251-JCC, 2015 WL 13145347 at *3 (W.D. Wash. May 26, 2015).  Indeed,

6    the Washington Supreme Court has applied the doctrine only "to a narrow class of cases,

7    primarily limiting its application to claims arising out of construction on real property

8    and real property sales," *Elcon Constr.*, 273 P.3d at 969, and specifically directs that the

9    doctrine should not apply "'unless and until [the Washington Supreme Court] has . . .

10   decided otherwise,'" *id*. at 969-70 (quoting *Eastwood*, 241 P.3d at 1276).  Due to the

11   marked distinctions between the economic loss rule in Iowa and the independent duty

12   doctrine in Washington, as well as the scope of the application of these rules in each

13   state, the court concludes that there is an actual conflict between the law or interests of

14   Iowa and Washington with respect to Veridian's negligence claim.[4]

15       *b.  Negligence Per Se*

16       Veridian asserts a separate claim for negligence *per se*.  (FAC ¶¶ 129-35.)  Under

17   Iowa law, the violation of a statute may give rise to a claim for negligence *per se*.  *See*

18   //

---

19   [4] Veridian asserts that there is no actual conflict between the law of Washington and Iowa
20   with respect to its negligence claim because neither the economic loss rule in Iowa nor the
     independent duty doctrine in Washington bars its claim.  (*See* Resp. at 18-22.)  Even assuming
     that Veridian is correct, however, the result would be the application of Washington law because
21   in the absence of an actual conflict, Washington law applies.  *See Burnside*, 864 P.2d at 941; *DP*
     *Aviation*, 268 F.3d at 845.  This is the same result the court reached after applying "the most
22   significant relationship" test.  *See infra* § III.B.2.

1   *Winger v. CM Holdings, LLC*, 881 N.W.2d 433, 448 (Iowa 2016) (quoting *Wiersgalla v.*

2   *Garrett*, 486 N.W.2d 290, 292 (Iowa 1992)) ("[I]f a statute or regulation . . . provides a

3   rule of conduct specifically designed for the safety and protection of a certain class of

4   persons, and a person within that class receives injuries as a proximate result of a

5   violation of the statute or regulation, the injuries would be actionable, as . . . negligence

6   *per se*.") (internal quotation marks and citations omitted).  In Washington, however, the

7   violation of a statute or the breach of a statutory duty is not considered negligence *per se*,

8   but may be considered by the trier of fact only as evidence of negligence.  RCW

9   5.40.050.  Thus, assuming Veridian can establish that Eddie Bauer violated a statute that

10   fell within Iowa's negligence *per se* rule, it might be able to pursue such a claim under

11   Iowa law, but not under Washington law.  Thus, an actual conflict exists between the law

12   of Iowa and Washington on this claim.

13            *c.  Declaratory and Injunctive Relief*

14         Veridian also asserts a claim for declaratory and injunctive relief.  (FAC

15   ¶¶ 136-43.)  Iowa law recognizes that an "injunction may be obtained as an independent

16   remedy by an action in equity, or as an auxiliary remedy in any action."  Iowa R. Civ. P.

17   1.1501.  Indeed, "[u]nder Iowa law, a request for permanent injunctive relief alone can

18   serve as the underlying claim for a request for a temporary injunction in an equitable

19   action." *Johnson v. Moody*, No. 416CV00449RGESBJ, 2016 WL 8839427, at *4 (S.D.

20   Iowa Nov. 14, 2016); *see also Lewis Invs., Inc. v. City of Iowa City*, 703 N.W.2d 180,

21   184 (Iowa 2005) (stating that "the plaintiff's underlying claim is an equitable action for

22   permanent injunctive relief").  In contrast to Iowa's law, Washington does not recognize

1    a standalone claim for injunctive relief, but rather views an injunction as a form of relief

2    available for some causes of action.  *See, e.g.*, *Hockley v. Hargitt*, 510 P.2d 1123, 1132

3    (Wash. 1973) (distinguishing between a cause of action based on the CPA and the forms

4    of relief that are potentially available, including damages and an injunction); *see also*

5    *Robinson v. Wells Fargo Bank Nat'l Ass'n*, No. C17-0061JLR, 2017 WL 2311662, at *5

6    (W.D. Wash. May 25, 2017) ("Injunctive relief is available only if [the plaintiff] is

7    entitled to such a remedy on an independent cause of action.").  Indeed, Veridian

8    acknowledges that Iowa recognizes a "standalone" claim for injunctive relief while

9    Washington does not.  (Resp. at 6 n.7.)  Thus, there is an actual conflict between the laws

10    of Iowa and Washington with respect to this claim.[5]

11          *d.  Statutory Claims*

12          Finally, Eddie Bauer asserts that there is an actual conflict between the law of

13    Iowa and Washington with respect to Veridian's statutory claims.  Veridian alleges a

14    claim based on RCW 19.255.020, which is a Washington statute that addresses

15    unauthorized cyber-intrusions on the account information of credit card and debit card

16    holders.  (FAC ¶¶ 144-51.)  There is no Iowa counterpart to this Washington statute.

17

18         [5] Although Veridian acknowledges that Iowa recognizes a "standalone" claim for injunctive relief while Washington does not, Veridian nevertheless counters that it brings its

19    claim for injunctive and declaratory relief not under state law, but rather under federal law—the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.  (Resp. at 6 n.7 ("Plaintiff's Declaratory Judgment Act claim plainly is not a standalone injunctive relief claim.  And, as a federal cause of

20    action, state law does not apply to this claim.").  The federal statute, however, also creates only a remedy and not an independent claim.  *See Stock West, Inc. v. Confederated Tribes of Colville

21    Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) ("[The] Declaratory Judgment Act . . . only creates a remedy and is not an independent basis for jurisdiction."); *see also Ajetunmobi v.

22    Clarion Mortg. Capital, Inc.*, 595 F. App'x 680, 684 (9th Cir. 2014) ("Declaratory and injunctive relief are remedies, not causes of action.").

1   Veridian also alleges a statutory claim based on Washington's CPA.  (FAC ¶¶ 152-65.)

2   Unlike Washington's CPA, however, Iowa's Consumer Fraud Act ("CFA") requires the

3   state attorney general to approve the filing of a class action lawsuit under the statute.

4   Iowa Code § 714H.7.  Thus, the court concludes that an actual conflict exists as to the

5   law of the two states regarding Veridian's substantive statutory claims.[6]

6        2.   The State with the Most Significant Relationship

7        If an actual conflict exists, Washington requires application of the law of the

8   forum that has the "most significant relationship" to the action.  *See Johnson*, 555 P.2d at

9   1000.  Application of the "most significant relationship" test is a two-step process.  *See*

10  *id.*  First, the court determines which state has the most significant relationship to the

11  cause of action.  *Id.*  Second, if the relevant contacts to the cause are balanced, the court

12  then considers "the interests and public policies of potentially concerned states and . . .

13  the manner and extent of such policies as they relate to the transaction at issue."  *Id.* at

14  1001 (quoting *Potlatch No. 1 Fed. Credit Union v. Kennedy*, 459 P.2d 32, 35 (Wash.

15  1969)).

16       In determining the state with the most significant relationship to the occurrence

17  and the parties, the court considers "(a) the place where the injury occurred, (b) the place

18  where the conduct causing the injury occurred, (c) the domicil, residence, nationality,

19  place of incorporation and place of business of the parties, and (d) the place where the

20

21  ───────────────
    [6] Veridian argues that it has not asserted a claim under Iowa's CFA and that as a
    non-resident it "may sue" under the CPA.  (Resp. at 6 n.7.)  The question, however, is not
    whether Veridian "may sue" under the CPA, but rather which law should apply to Veridian's
22  claim based on Washington's choice-of-law rules.

1   relationship, if any, between the parties is centered." *Brewer v. Dodson Aviation*, 447 F.

2   Supp. 2d 1166, 1175-76 (W.D. Wash. 2006) (discussing Washington law and citing the

3   Restatement (Second) of Conflict of Laws § 145(2) (1971)).  The court's approach is not

4   merely to count contacts, but rather to consider which contacts are the most significant

5   and where those contacts are found.  *Johnson*, 555 P.2d at 1000.

6         *a.   The Place of the Injury*

7         Eddie Bauer asserts that the injury at issue occurred in Iowa because that is where

8   Veridian and the majority of its customers are located.[7]  (2d MTD at 6-7.)  Veridian,

9   however, alleges that it "has thousands of checking, savings, and deposit customers

10   located in Iowa and throughout the United States, including hundreds of checking,

11   savings, and deposit customers located in Washington State."  (FAC ¶ 11.)  Further,

12   Eddie Bauer's argument ignores Veridian's class allegations.  (*See* Resp. at 8 n.10.)

13   Veridian alleges that the Data Breach harmed Eddie Bauer's customers throughout the

14   United States and Canada.  (FAC ¶ 1, 7, 60.)  Veridian further alleges that Eddie Bauer's

15   conduct injured not just Eddie Bauer's customers, but various financial institutions,

16   which are similarly situated to Veridian, and also located throughout the United States.

17   (*See* FAC ¶¶ 8-9, 99.)

18         "In the case of personal injuries or of injuries to tangible things, the place where

19   the injury occurred is a contact that, as to most issues, plays an important role in the

20   selection of the state of the applicable law."  Restatement (Second) of Conflict of Laws

21   

22        [7] Eddie Bauer acknowledges that some of Veridian's customers are located in Nebraska as well.  (2d MTD at 7 & n.3.)

1    § 145, cmt. e (1971).  "Situations do arise, however, where the place of injury will not

2    play an important role in the selection of the state of the applicable law.  This will be so,

3    for example, when the place of injury can be said to be fortuitous . . . or when . . . injury

4    has occurred in two or more states."  *Id.*; *see Kelley*, 251 F.R.D. at 552 ("Here, the

5    Defendant's allegedly unfair or deceptive acts caused injury throughout the country.  The

6    location of the harm suffered is fortuitous.").

7         Veridian alleges that Eddie Bauer's conduct with respect to the Data Breach

8    caused injury in a variety of states throughout country (FAC ¶¶ 1, 7-9, 60, 99); thus, the

9    location of the alleged harm was fortuitous, and the place of injury does not play an

10   important role in the court's choice of law analysis here.

11        *b.  The Place Where the Conduct Causing the Injury Occurred*

12        Eddie Bauer argues that the location where the alleged conduct causing the injury

13   occurred is unknown because "[t]he location where the [cyber] attack was launched is

14   unknown" and Veridian fails to allege that the computer servers that were attacked are

15   located in Washington.  (2d MTD at 7.)  Again, Eddie Bauer misconstrues the crux of

16   Veridian's allegations.  Veridian is not suing the cyber attacker.  Veridian is suing Eddie

17   Bauer for negligence and other misconduct related to its management's decisions

18   concerning Eddie Bauer's internal data security and the Data Breach.  (*See* FAC

19   ¶¶ 113-15.)  Veridian alleges that Eddie Bauer "orchestrated and implemented" the

20   decisions that lead to the Data Breach "at its corporate headquarters in Bellevue,

21   Washington," and its failure to employ adequate data security measures "emanated from

22   [its] headquarters."  (*Id.* ¶¶ 113-14.)  Based on these allegations, the court concludes that

1    the place where the conduct alleged to have caused the injury occurred was in

2    Washington.

3           When the injury occurs in two or more states or the location of the injury is

4    fortuitous, the weight the court gives to the place where the alleged conduct causing the

5    injury occurred increases.  Restatement (Second) of Conflict of Laws § 145, cmt. e

6    (1971) ("When the injury occurred in two or more states, or when the place of injury

7    cannot be ascertained or is fortuitous and, with respect to the particular issue, bears little

8    relation to the occurrence and the parties, the place where the defendant's conduct

9    occurred will usually be given particular weight in determining the state of the applicable

10   law."); *Kelley*, 251 F.R.D. at 552 ("[B]ecause the place of injury is fortuitous the Court

11   gives greater weight to Washington, the location of the source of the injury.").  Thus, the

12   court places particular weight on this factor in its choice of law analysis.

13              c.   *The Domicil, Residence, Nationality, Place of Incorporation and Place of*
                    *Business of the Parties & the Place Where the Parties' Relationship is*
14                  *Centered*

15          The third factor the court considers is "the domicil, residence, nationality, place of

16   incorporation and place of business of the parties"  *Brewer*, 447 F. Supp. 2d at 1175-76.

17   The fourth factor is "the place where the relationship, if any, between the parties is

18   centered."  *Id.*  The court considers these factors together.

19          Eddie Bauer is a citizen of Washington, which is also where it maintains its

20   principal place of business.  (FAC ¶ 13.)  Veridian is an Iowa-chartered credit union with

21   its principal place of business in Iowa (*id.* ¶ 11), although if a nationwide class is certified

22   there will be plaintiffs domiciled in many states (*see id.* ¶ 99).  "[T]he importance of

ORDER - 14

1    these contacts depends largely upon the extent to which they are grouped with other

2    contacts."  Restatement (Second) of Conflict of Laws § 145, cmt. e (1971).  The fact that

3    one of the parties is domiciled in a particular state is of little significance, but gains

4    significance if the domicile or principal place of business for all parties is located in the

5    same state.  *Id.*  Because there is no grouping of contacts in this instance, the court finds

6    this factor of minimal significance to its choice of law analysis.

7           Further, the parties' relationship is not centered in any one place.  The parties did

8    not contract with one another.[8]  (Resp. at 20 ("[Veridian] never contracted (directly or

9    indirectly) for any products or services from Eddie Bauer . . . ."); 2d MTD at 10 n.9

10   ("[T]here is no direct contractual privity alleged between the parties.").)  Their

11   headquarters are in different states, and they both have customers throughout the country.

12   (*See* FAC ¶¶ 11-12.)  Thus, the court finds that this factor bears little, if any, weight in

13   the court's choice-of-law analysis.

14          The parties agree that neither of these factors should play a significant role in the

15   court's choice of law analysis.  (*See* 2d MTD at 8-9; Resp. at 8 ("As to the third and

16   fourth factors, the putative class is domiciled in all states, while Eddie Bauer is domiciled

17   in Washington, and thus 'the parties' relationship is not centered in any particular place

18   //

19   //

20

21   _____

22      [8] Veridian alleges that Eddie Bauer has a contractual relationship with payment card
     networks (like Visa and Mastercard), who, in turn, have relationships with card-issuing financial
     institutions like Veridian.  (FAC ¶¶ 19-20.)

1    because the parties did not contract with one another.'") (quoting *Kelley*, 251 F.R.D. at

2    552).)  Thus, these factors have little bearing on the court's choice of law analysis.

3         *d. Evaluating the Contacts*

4         The court is mindful that it is not to merely count contacts but to consider which

5    contacts are the most significant and where those contacts are found.  *Johnson*, 555 P.2d

6    at 1000.  Relying on this guidance, and summarizing its analysis of the relevant contacts

7    above, the court concludes that the place where the alleged conduct occurred which

8    caused the injury is the most significant contact for purposes of the court's choice of law

9    analysis, and that place is Washington.  The court gives greater weight to the location of

10   the alleged wrongful conduct because the location of the alleged injury is in multiple

11   states and is fortuitous.  *See supra* §§ III.B.2.a, .b.  As discussed above, the other contacts

12   are of little significance to the court's analysis here.  *See supra* § III.B.2.a, .c.  Thus, the

13   state with the most significant relationship to this action is Washington, and its law

14   applies.

15        *e. The Interests and Public Policies of the Most Concerned States*

16        Assuming, *arguendo*, that the foregoing contacts were evenly balanced, the court

17   would still apply Washington law.  "If the contacts are evenly balanced, the second step

18   of the analysis involves an evaluation of the interests and public policies of the concerned

19   states to determine which state has the greater interest in determination of the particular

20   issue."  *Schmahl v. Macy's Dep't. Stores, Inc.,* No. CV-09-68-EFS, 2010 WL 3061526, at

21   *6 (E.D. Wash. July 30, 2010); *Zenaida-Garcia v. Recovery Sys. Tech., Inc*., 115 P.3d

22   1017, 1020 (Wash. Ct. App. 2005).  This step turns on the purpose of the law and the

1    issues involved. *Kelley*, 251 F.R.D. at 553.  When "the primary purpose of the tort rule

2    involved is to deter or punish misconduct [and not merely to compensate the victim for

3    her injuries] . . . the state where the conduct took place may . . . [have the] most

4    significant relationship." *Id.* (quoting Restatement (Second) of Conflict of Laws § 145,

5    cmt. c (1971)).

6           Washington has the paramount interest in applying its law to this action.  In

7    addition to its negligence claims, Veridian also asserts claims based on RCW 19.255.020,

8    which is designed to fight unauthorized cyber-intrusions into credit card and debit card

9    holders' data, and the CPA.   (FAC ¶¶ 144-65.)  The CPA targets all unfair trade

10   practices either originating from Washington businesses or harming Washington citizens.

11   *Kelley*, 251 F.R.D. at 553.  Application of the CPA to Veridian's claims effectuates the

12   broad deterrent purpose of CPA, especially as applied to one of Washington's leading

13   corporate citizens.  *See id.* (citing Restatement (Second) of Conflict of Laws § 145, cmt. c

14   (1971); RCW 19.86.920).  The same is true of RCW 19.255.020, which applies to credit

15   card processors and businesses, rendering them potentially liable to financial institutions

16   if they fail to "take reasonable care to guard against unauthorized access to account

17   information." *Id.*  Thus, the court concludes that Washington law applies to this action

18   and now considers Eddie Bauer's motion to dismiss each of Veridian's claims.[9]

19   //

20

21

22          [9] Because the court concludes that Washington law applies, it does not consider Eddie
     Bauer's arguments to dismiss Veridian's claims based on Iowa law.  (*See* 2d MTD at 9-19.)

**C.     Negligence *Per Se***

As noted above, Washington does not recognize negligence *per se* as a separate cause of action.  *See supra* § III.B.1.b.  Although the violation of a statute or the breach of a statutory duty "may be considered by the trier of fact as evidence of negligence," RCW 5.40.050, Veridian may not assert a separate cause of action for negligence *per se* in Washington.  Accordingly, the court dismisses this cause of action (*see* FAC ¶¶ 129-35) with prejudice and without leave to amend.

**D.     Declaratory and Injunctive Relief**

As also noted above, Veridian asserts a claim for injunctive and declaratory relief based on the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.  (*See* Resp. at 6 n.7); *see supra* n.4.  As the court explained, the Declaratory Judgment Act "only creates a remedy."  *See Confederated Tribes*, 873 F.2d at 1225.  Further, "[a] permanent injunction is a form of relief that the court may grant when a plaintiff succeeds on a substantive cause of action that lends itself to this remedy."  *Dinkins v. Schinzel*, No. 217CV01089JADGWF, 2017 WL 4891524, at *2 (D. Nev. Oct. 30, 2017).  Although Veridian may continue to request declaratory and injunctive relief in an amended complaint, these items are requests for relief and not separate legal causes of action.  *See Barton v. Captial One Bank (USA), N.A.*, No. 12-cv-05412-JST, 2013 WL 12173918, at *8 (N.D. Cal. Apr. 4, 2013); *Santos v. Countrywide Home Loans*, No. 2:09–02642 WBS DAD, 2009 WL 3756337, at *5 (E.D. Cal. Nov. 6, 2009) ("Declaratory and injunctive relief are not independent claims, rather they are forms of relief.").  Thus, the court

1    dismisses Veridian's cause of action for declaratory and injunctive relief, but with leave

2    to amend as described above.[10]  (*See* FAC ¶¶ 136-43.)

3    **E.   Negligence**

4          Under Washington law, to state a claim for negligence, Veridian must adequately

5    allege "(1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting

6    injury, and (4) the breach as the proximate cause of the injury."  *Degel v. Majestic Mobile*

7    *Manor*, 914 P.2d 728, 731 (Wash. 1996).  The existence of a duty "is a question of law

8    and depends on mixed considerations of logic, common sense, justice, policy, and

9    precedent."  *Synder v. Med. Serv. Corp.*, 35 P.3d 1158, 1164 (Wash. 2001).  "Duty in a

10   negligence action is a threshold question" and "may be predicated 'on violation of statute

11   or of common law principles of negligence.'"  *Jackson v. City of Seattle*, 244 P.3d 425,

12   428 (Wash. Ct. App.  2010) (quoting *Burg v. Shannon & Wilson, Inc*., 43 P.3d 526, 530

13   (Wash. Ct. App. 2002)); *Alhadeff v. Meridian on Bainbridge Island, LLC*, 220 P.3d 1214,

14   1222 (Wash. 2009) (same).

15         Eddie Bauer argues that Veridian's negligence claim must be dismissed because

16   Eddie Bauer owes no duty to Veridian.  (2d MTD at 20-25.)  Veridian argues that Eddie

17   Bauer owes it a duty predicated on common law principles of negligence and on the

18

19         [10] Eddie Bauer also asks the court to dismiss Veridian's request for declaratory and
     injunctive relief because it owes no duty to Veridian and "[t]here is no real, immediate, and
20   substantial risk of another data breach as required for declaratory or injunctive relief." (Reply at
     15; *see also* 2d MTD at 26-27.)  As noted above, Veridian cannot assert these forms of relief as
21   separate legal causes of action. *See supra* § III.D.  But construing Veridian's allegations for
     declaratory and injunctive relief as forms of relief only, the court declines Eddie Bauer's
22   invitation to dismiss them at this time.  The court, however, may reconsider its ruling in the
     context of a motion for summary judgment if appropriate.

1   violation of two statutes.  (Resp. at 2-3, 9-17.)  The court analyzes each basis for a duty in

2   turn.

3       1.   Duty Based on Common Principles of Negligence

4       Eddie Bauer first asserts that under common law principles of negligence in

5   Washington it owes no duty to Veridian as a matter of law.  (2d MTD at 20-24.)  Eddie

6   Bauer argues that Veridian, as "a sophisticated financial institution," is not within the

7   class of individuals to whom Eddie Bauer owes a duty.  (2d MTD at 20-21.)  Indeed,

8   Eddie Bauer argues that, by suing for damages allegedly incurred in the Data Breach,

9   Veridian improperly seeks to impose tort liability on Eddie Bauer for the "criminal attack

10  of a third-party."  (*Id.* at 21.)

11      Eddie Bauer is correct that under Washington law "an actor ordinarily owes no

12  duty to protect an injured party from harm caused by the criminal acts of third parties."

13  *Parrilla v. King Cty.*, 157 P.3d 879, 884 (Wash. Ct. App. 2007).  Indeed, the Washington

14  Supreme Court has "not yet found a duty to protect a third party from the criminal acts of

15  another absent a special relationship."  *Robb v. City of Seattle*, 295 P.3d 212, 216 (Wash.

16  2013).  Nevertheless, the Washington Court of Appeals has found that the affirmative act

17  of an alleged tortfeaser combined with the foreseeability and magnitude of the risk

18  created by the alleged torfeaser may justify imposing such a duty under the Restatement

19  (Second) of Torts § 302B, comment e.  *Id.* (citing *Parrilla*, 157 P.3d at 884-85).  The

20  crux of the issue lies in the distinction between an action or "misfeasance," on the one

21  hand, and an omission or "nonfeasance," on the other.  *Id.*  As the Washington Supreme

22  Court has explained:

1

2

3

> [A]n actor might still have a duty to take action for the aid or protection of the plaintiff in cases involving misfeasance (or affirmative acts), where the actor's prior conduct, whether tortious or innocent, may have created a situation of peril to the other.  Liability for nonfeasance (or omissions), on the other hand, is largely confined to situations where a special relationship exists.

4

*Id.* at 217.  Thus, to impose liability on Eddie Bauer for the criminal actions of a hacker

5

in creating the Data Breach, Veridian must either allege that a "special relationship"

6

exists between Veridian and Eddie Bauer, or that Eddie Bauer's action surrounding the

7

Data Breach constituted malfeasance, rather than merely nonfeasance.

8

Veridian asserts that a "special relationship" exists between itself and Eddie Bauer

9

because Eddie Bauer "voluntarily assumed the duty to protect [Veridian's] property,

10

*i.e.*[,] its payment card data, and [Veridian] relied on [Eddie Bauer] to keep its property

11

safe."  (Resp. at 14 (citing *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 396 P.3d 351,

12

363-64 (Wash. Ct. App. 2017)).)  Veridian provides scant analysis of *Merriman* and the

13

court does not view *Merriman* as analogous.  In *Merriman*, the Washington Court of

14

Appeals found that an insurance adjuster owed a duty to certain insureds based on

15

specific duties that the adjuster had voluntarily assumed.  396 P.3d at 367.  The Court of

16

Appeals, however, based its decision in part on "whether providing a legal duty of care

17

would advance or frustrate relevant insurance law."  *Id.* at 366.  "Both courts and the

18

legislature have recognized that insurance contracts are imbued with public policy

19

concerns."  *Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 690 (Wash. 2013).  Those

20

same public policy concerns are not at issue here.  Veridian cites no other Washington

21

case in support of its assertion that the court should find a "special relationship" between

22

1   two sophisticated business entities engaged in the type of non-contractual relationship

2   alleged here.  (*See* Resp. at 14.)  Given the paucity of Washington legal authority, the

3   court concludes that Veridian's allegations of trust and reliance between two

4   sophisticated business entities are insufficient to establish a special relationship.

5   Concluding otherwise would stretch Washington law beyond its current confines.

6       Assuming that there is no "special relationship" between Veridian and Eddie

7   Bauer, Eddie Bauer may still have a duty to Veridian if Eddie Bauer engaged in an

8   affirmative act or "misfeasance" such that it "created a situation of peril" for Veridian.

9   *See Robb*, 295 P.3d at 216.  Veridian's alleges myriad failures on Eddie Bauer's part.  For

10  example, Veridian alleges that Eddie Bauer failed to "maintain adequate data security

11  measures, implement best practices, upgrade security systems, and comply with industry

12  standards," "implement chip-based card technology, otherwise known as EMV

13  technology,"[11] "take reasonable steps to protect its computer systems from being

14  breached," "timely upgrade its POS software to remedy security vulnerabilities," "take

15  reasonable steps to upgrade and protect Payment Card Data," "ensure that its IT systems

16  were adequately secured," "make necessary changes to its security practices and

17  protocols," "take necessary measures to maintain an adequate firewall," "comply with

18  industry standards for data security," and promptly notify its customers or other affected

19  entities concerning the Data Breach.  (*See* FAC ¶¶ 2-3, 5-6, 8, 39, 48, 51, 54, 73, 82.)

20  Indeed, Veridian expressly alleges that "[t]he key wrongdoing at issue in this litigation"

21

22      [11] "EMV" stands for Europay, MasterCard, and Visa.  (FAC ¶ 5.)

1    is "Eddie Bauer's failure to employ adequate data security measures." (*Id.* ¶ 114.)  These

2    allegations comprise numerous omissions or nonfeasance on the part of Eddie Bauer, but

3    they do not describe misfeasance or any affirmative act "that created a situation of peril"

4    for Veridian.  *See Robb*, 295 P.3d at 216.  Because Eddie Bauer can only be held liable

5    for its alleged omissions or nonfeasance in the context of a "special relationship," *see id.*,

6    the court concludes that Eddie Bauer does not owe a duty to Veridian based on common

7    law principles of negligence in Washington.

8            2.  Duty Predicated upon Violation of a Statute

9            The court's analysis of whether Veridian has adequately alleged that Eddie Bauer

10   owes it a duty, however, is not yet complete.  Veridian also alleges that Eddie Bauer

11   owes it a duty predicated upon two statutes:  (1) Section 5 of the Federal Trade

12   Commission Act of 1914 ("FTC Act"), 15 U.S.C. § 45; and (2) RCW 19.255.020, a

13   Washington statute designed to address damage to financial institutions from the

14   unauthorized cyber-intrusions of the account information of credit card and debit card

15   holders.  The court addresses the existence of a duty predicated upon each of these

16   statutes in turn.

17           As previously noted, in Washington, the violation of a statute or the breach of a

18   statutory duty is not considered negligence *per se*, but may be considered by the trier of

19   fact as evidence of negligence.  RCW 5.40.050; *see supra* § § III.B.1.b.  In deciding

20   "whether violation of a public law or regulation shall be considered in determining

21   liability," Washington courts turn to the Restatement (Second) of Torts § 286.  *Barrett v.*

22   *Lucky Seven Saloon, Inc.*, 96 P.3d 386, 390 (Wash. 2004).  Under this provision of the

1   Restatement, "[t]he court may adopt as the standard of conduct of a reasonable [person]

2   the requirements of a legislative enactment . . . whose purpose is found to be exclusively

3   or in part (a) to protect a class of persons that includes the person whose interest is

4   invaded, and (b) to protect the particular interest which is invaded, and (c) to protect that

5   interest against the kind of harm which has resulted, and (d) to protect that interest

6   against the particular hazard from which the harm results."  Restatement (Second) of

7   Torts § 286 (1965).

8          3.   The FTC Act

9          In evaluating Section 5 of the FTC Act, the court finds that Veridian may not base

10  Eddie Bauer's alleged standard of conduct on the Act because the Act fails the first and

11  second prongs of the Restatement's test.  Those prongs require that the purpose of the

12  statute must be to protect (1) a class of persons that includes the person whose interest is

13  invaded and (2) the particular interest which the plaintiff alleges has been invaded.  *See*

14  Restatement (Second) of Torts § 286(a), (b).  The Supreme Court states that "[t]he

15  paramount aim of [the FTC Act] is the protection of the public from the evils likely to

16  result from the destruction of competition or the restriction of it in a substantial degree."

17  *FTC v. Raladom Co.*, 283 U.S. 643, 647-48 (1931).  "Section 5 in particular seeks to

18  protect 'consumer[s]' and 'competitor[s]' from 'unfair trade practice[s].'"  *SELCO Cmty.*

19  *Credit Union v. Noodles & Co.*, --- F. Supp. 3d ----, 2017 WL 3116335, at *5 (D. Colo.

20  July 21, 2017) (quoting *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972)).

21  Veridian alleges no harm from "the destruction of competition," and it alleges neither that

22  it is a customer nor a competitor of Eddie Bauer.  (*See generally* FAC.)  The court

1    concludes that Section 5 of the FTC Act is not designed to protect either the class of

2    persons that includes Veridian or the interest that Veridian alleges Eddie Bauer invaded.

3    Thus, Section 5 of the FTC Act fails the test under Section 286 of the Restatement, and

4    Veridian cannot allege that Eddie Bauer owes it a duty predicated on this statute.

5            4.  RCW 19.255.020

6            Unlike Section 5 of the FTC Act, however, the court finds that, in the context of

7    this lawsuit, RCW 19.255.020 meets the test of Section 286 of the Restatement.  RCW

8    19.255.020 states in pertinent part:

> If a processor or business fails to take reasonable care to guard against
> unauthorized access to account information that is in the possession or under
> the control of the business or processor, and the failure is found to be the
> proximate cause of a breach, the processor or business is liable to a financial
> institution for reimbursement of reasonable actual costs related to the
> reissuance of credit cards and debit cards that are incurred by the financial
> institution to mitigate potential current or future damages to its credit card
> and debit card holders that reside in the state of Washington as a consequence
> of the breach, even if the financial institution has not suffered a physical
> injury in connection with the breach.

14   RCW 19.255.020(3)(a).[12]  The "class of persons" that this statute is designed to protect is

15   comprised of "financial institution[s]" that have incurred "actual costs" related to the

16   unauthorized access of their credit card and debit card holders' account information.  *See*

---

18   [12] The statute defines a "business" as "an individual, partnership, corporation,
     association, organization, government entity, or any other legal or commercial entity that
19   processes more than six million credit card and debit card transactions annually, and who
     provides, offers, or sells goods or services to persons who are residents of Washington."  RCW
20   19.255.020(1)(c).  The statute defines a "processor" as "an individual, partnership, corporation,
     association, organization, government entity, or any other legal or commercial entity, other than
21   a business as defined under this section, that directly processes or transmits account information
     for or on behalf of another person as part of a payment processing service."  RCW
22   19.255.020(1)(h).  Neither party argues that Eddie Bauer does not fall within one these
     definitions.

1    *id.* Veridian and its putative class of similarly situated financial institutions fall within

2    this "class of persons."  In addition, the particular interest which the statute seeks to

3    protect—the security of the financial institutions' credit card and debit card holders'

4    account information—is the same interest that would be protected by imposing a duty on

5    Eddie Bauer with respect to Veridian's negligence claim.  Finally, the harm or hazard that

6    a violation of RCW 19.255.020 causes—actual costs due to the unauthorized access of

7    account holders' information—is the same as the harm alleged by Veridian in its

8    negligence claim.  Accordingly, the court finds that RCW 19.255.020 meets the test set

9    forth in Section 286 of the Restatement.

10            Based on its application of Section 286 of the Restatement, the court concludes

11   that the "reasonable care" standard found in RCW 19.255.020 defines the minimum

12   standard of conduct under Washington law for processors or businesses whose alleged

13   failure to protect from unauthorized access credit and debit card account information that

14   is in their possession causes damage to financial institutions.  *See Barrett*, 96 P.3d at 393

15   (concluding based on the application of the four-part test of Section 286 of the

16   Restatement that RCW 66.44.200(1), which forbids the selling of alcohol "to any person

17   apparently under the influence of liquor," defines the minimum standard of conduct for

18   commercial hosts whose alleged overservice causes a drunk driving accident injuring a

19   third party); *see also Kappelman v. Lutz*, 170 P.3d 1189, 1196 (Wash. Ct. App. 2007),

20   *aff'd*, 217 P.3d 286 (2009) ("When a statute meets [the test of Section 286 of the

21   Restatement], evidence of a statutory violation is admissible on the issue of

22   negligence. . . . And the party offering the evidence is entitled to a jury instruction

1   consistent with RCW 5.40.050.") (citing 6 Wash. Prac., Wash. Pattern Jury Instructions:

2   Civil 60.03, at 481 (2005) (WPI)).[13]   Accordingly, the court denies Eddie Bauer's motion

3   to dismiss Veridian's negligence claim on the grounds that Eddie Bauer does not owe

4   Veridian a duty as a matter of law.

5   **F.     Violation of RCW 19.255.020**

6         Veridian alleges a claim directly based on Eddie Bauer's violation of RCW

7   19.255.020.  (FAC ¶¶ 144-51.)  Eddie Bauer argues that Veridian's claim must be

8   dismissed because Veridian fails to specifically allege that it reissued cards to

9   Washington residents.  (2d MTD at 25.)  The statute states in part that, in the event of

10  certain unauthorized cyber-intrusions, a "business" or "processor" is liable "to a financial

11  institution for reimbursement of reasonable actual costs related to the reissuance of credit

12  cards and debit cards that are incurred by the financial institution to mitigate potential

13

---

14  [13] Eddie Bauer argues that the Washington Legislature "provided a carefully limited duty
    on the part of vendors to protect a card issuer only for costs to reissue [cards] to Washington
15  residents."  (Reply at 12.)  First, the statutory language that Eddie Bauer relies on is unclear, and the
    court is not convinced that RCW 19.255.020 limits damages in the manner Eddie Bauer asserts.
16  Nevertheless, the court need not decide that issue at this juncture because the statute also
    expressly provides that "[t]he remedies under this section are cumulative and do not restrict any
17  other right or remedy otherwise available under law."  RCW 19.255.020(6).  Thus, although
    RCW 19.255.020(3)(a) defines the minimum standard of conduct applicable to Eddie Bauer
18  because it meets the test set forth in Section 286 of the Restatement, the statute expressly does
    not restrict the remedies that Veridian may otherwise seek in an action based on negligence.
19         Eddie Bauer also asserts that if a Washington vendor has a duty beyond simply protecting
    card issuers for the costs of reissuing cards to Washington residents, "then RCW 19.255.020
20  would be completely unnecessary and meaningless."  (Reply at 12-13.)  The court disagrees.
    The remedies that the Legislature provides in the case of violation of RCW 19.255.020 are
21  distinct from common law remedies available in a negligence action.  For example, "[i]n any
    legal action brought pursuant to [RCW 19.255.020(3)(a)], the prevailing party is entitled to
    recover its reasonable attorneys' fees and costs incurred in connection with the legal action."  *Id.*
22  The same is not true for a common law negligence action.  Accordingly, the court rejects Eddie
    Bauer's argument.

1    current or future damages to its credit card and debit card holders that reside in the state

2    of Washington."  RCW 19.255.020.  The court declines to hold that Veridian's

3    allegations are inadequate here.  Veridian brings this action as a putative class action on

4    behalf of a nationwide class of financial institutions.  (FAC ¶ 99.)  Veridian alleges that

5    Eddie Bauer is Washington company with approximately 370 stores across the United

6    States and Canada.  (*Id.* ¶ 12.)  Veridian asserts that it has more than 209,000 customers

7    throughout the United States, including Washington.  (*Id.* ¶ 11.)  Veridian alleges that its

8    putative class of similarly-situated financial institutions cancelled and reissued payment

9    cards affected by the alleged data breach in Eddie Bauer stores.  (*Id.* ¶ 8.)  Viewing these

10   allegations in the light most favorable to Veridian, the court finds that it is reasonable to

11   infer that financial institutions in the putative nationwide class reissued payment cards to

12   Washington residents.  Accordingly, the court denies Eddie Bauer's motion to dismiss

13   this claim.

14   **G.    Violation of the CPA**

15        Washington's CPA prohibits "[u]nfair methods of competition and unfair or

16   deceptive acts or practices in the conduct of any trade or commerce."  RCW 19.86.020.

17   "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act

18   or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury

19   to a person's business or property, and (5) causation."  *Panag v. Farmers Ins. Co. of*

20   *Wash.*, 204 P.3d 885, 889 (Wash. 2009).  Failure to satisfy even one element is fatal to a

21   CPA claim.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 719 P.2d 531,

22   539-40 (Wash. 1986).

1    Eddie Bauer asserts that the court should dismiss Veridian's CPA claim because

2    Veridian fails to adequately allege the first element of a CPA claim—an unfair or

3    deceptive act or practice.  (2d MTD at 27-30).  Veridian asserts that its allegations that

4    Eddie Bauer failed to provide reasonable cyber security measures to protect the account

5    information on its customers' credit and debit cards constitutes either an "unfair or

6    deceptive act or practice" under the CPA.  (Resp. at 23-25.)

7        "Because the [CPA] does not define 'unfair' or 'deceptive,' [the Washington

8    Supreme Court] has allowed the definitions to evolve through a gradual process of

9    judicial inclusion and exclusion."  *Saunders v. Lloyd's of London*, 779 P.2d 249, 256

10   (Wash. 1989) (internal quotations omitted).  Either an unfair or a deceptive act can be the

11   basis for a CPA claim.  *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013)

12   ("The 'or' between 'unfair' and 'deceptive' is disjunctive.").  "An unfair act is

13   established by evidence that it (1) causes or is likely to cause substantial injury, which (2)

14   consumers cannot avoid, and (3) is not 'outweighed by countervailing benefits.'"

15   Merriman, 396 P.3d at 368 (quoting *Klem*, 295 P.3d at 1187 and 15 U.S.C. § 45(n)).[14]

16   The Washington Legislature directs that the CPA "shall be liberally construed [so] that its

17   beneficial purposes may be served."  RCW 19.86.920; *see also Thornell v. Seattle Serv.*

18

19

_____

20   [14] "Washington's CPA is modeled after federal consumer protection laws and
     incorporates many . . . provisions of the federal acts. . . . The Washington legislature instructed
21   courts to be guided by federal law in the area."  *Klem*, 295 P.3d at 1187; *see* RCW 19.86.920 ("It
     is the intent of the legislature that, in construing this act, the courts be guided by final decisions
22   of the federal courts and final orders of the federal trade commission interpreting the various
     federal statutes dealing with the same or similar matters.").

1  *Bureau, Inc.*, 363 P.3d 587, 590 (Wash. 2015) ("The language of the CPA evinces a

2  broad, rather than narrow, lens through which we interpret the statute.")

3      Based on the Washington courts' definition and the liberal construction the court

4  applies to the CPA, the court finds that Veridian's allegations sufficiently constitute an

5  "unfair act" under the statute.  Veridian alleges that Eddie Bauer failed to take proper

6  measures to protect account information of credit and debit card holders with respect to

7  its POS and data security systems.  (FAC ¶¶ 5, 39, 40-42, 57-62, 71-76, 81, 82-86, 157.)

8  Indeed, "[t]he key wrongdoing at issue in this litigation" is "Eddie Bauer's [alleged]

9  failure to employ adequate data security measures." (*Id.* ¶ 114.)  In light of known

10  cyber-intrusion risks and breaches, Veridian alleges that it was foreseeable that Eddie

11  Bauer's failure to take reasonable security measures to protect the data of payment card

12  holders would result in harm to thousands of customers and the payment card issuers, and

13  Eddie Bauer's failure did, in fact, result in this harm.  (*Id.* ¶¶ 1, 7-9, 46-56, 83, 93-98.)

14  These allegations constitute "substantial injury" to consumers.  *See Merriman*, 396 P.3d

15  at 368.

16      Eddie Bauer argues, however, that Veridian nevertheless has failed to adequately

17  allege an "unfair act" because consumers could have avoided the risk of data theft by

18  paying for items at Eddie Bauer stores with cash.  (2d MTD at 30.)  In light of the

19  ubiquitous use of credit and debit cards in all types of commerce, the court finds this

20  argument disingenuous. *See*, *e.g.*, *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788,

21  817 (9th Cir. 2007) (Kozinski, J. dissenting) ("Credit cards are ubiquitous . . . ."); *Price v.*

22  *Synapse Grp., Inc.*, No. 16-CV-01524-BAS-BLM, 2017 WL 3131700, at *4 (S.D. Cal.

1   July 24, 2017) ("[I]n a modern economy . . . credit card transactions are a ubiquitous

2   feature.")

3         Further, the court agrees with Veridian that customers had no way of knowing that

4   Eddie Bauer's cyber-security measures were allegedly deficient or that Eddie Bauer had

5   allegedly failed to implement appropriate software updates or other reasonable security

6   measures.  (*See* FAC ¶ 159.)  Without this knowledge, and given the broad adoption of

7   credit and debit cards as forms of payment in our economy, consumers had scant ability

8   to avoid the harms engendered by Eddie Bauer's alleged security failures.

9         Eddie Bauer further argues that Veridian has not alleged an act or practice that is

10  "likely to cause substantial harm" because inadequate security practices do not by

11  themselves cause direct harm to consumers, but rather only cause harm when the

12  information is stolen by a third party.  (2d MTD at 30.)  The court agrees with Veridian

13  that this argument distorts the causation analysis under the CPA.  (*See* Resp. at 25.)

14  Courts apply a "but for" proximate causation standard under the CPA, and the unfair act

15  or practice need not be the sole proximate cause of the harm.  *Indoor*

16  *Billboard/Washington Inc. v. Integra Telecom of Wash., Inc.,* 170 P.3d 10, 22 (Wash.

17  2007); *see also FTC v. Wyndham Worldwide Corp*., 799 F.3d 236, 246 (3d Cir. 2015)

18  (noting that the risk of foreseeable harm from inadequate data security is sufficient under

19  the FTC Act, and an unfair act need not be the most proximate cause of an injury).  Here,

20  Eddie Bauer's alleged failure to take reasonable security measures constitutes an unfair

21  act because it knowingly and foreseeably put Eddie Bauer's customers and payment card

22  financial institutions at a risk of harm from data theft and fraudulent payment card

1    activity and this harm allegedly occurred.  (*See* FAC ¶¶ 24, 55, 156.)  Because the court

2    concludes that Veridian adequately alleges an "unfair act" under the CPA, the court

3    denies Eddie Bauer's motion to dismiss Veridian's claim on that basis.[15]

4                                    **IV.  CONCLUSION**

5           Based on the foregoing analysis, the court GRANTS in part and DENIES in part

6    Eddie Bauer's motion to dismiss (Dkt. # 40).  Veridian may file an amended complaint

7    that is consistent with court's rulings herein.

8           Dated this 9th day of November, 2017.

9

10

11                                            JAMES L. ROBART
                                              United States District Judge

12

---

[15] The court need not determine whether Veridian has adequately alleged a "deceptive act" under the CPA because Veridian need not allege both an "unfair act" and a "deceptive act" to state a CPA claim.  *See Klem*, 295 P.3d at 1187.