THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| VERIDIAN CREDIT UNION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-0356 JLR |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| EDDIE BAUER, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

This matter is before the special master on a referral of various discovery disputes between plaintiff Veridian Credit Union ("Veridian") and defendant Eddie Bauer, LLC ("Eddie Bauer"). The discovery disputes in this case began almost a year ago and have caused the Court to extend class certification deadlines on at least five occasions (*see e.g.* dkt. ## 58, 66, 80, 101, 104) and prompting the Court to order that any further discovery disputes would result in sanctions to the losing party (dkt. # 117 (August 3, 2018 Minute Order)).

REPORT AND RECOMMENDATION- 1

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## PROCEDURAL BACKGROUND

Less than two months later, the parties requested another discovery conference with the Court. (Dkt. # 131.) In response to the Court's order that the parties submit separate statements of "no more than two (2) pages further addressing the merits of the proposed motion to compel," Eddie Bauer filed a two-page statement together with over 90-pages of exhibits for the Court's review. (Dkt. # 132-1-132-6.) Having already considered numerous motions from the parties regarding discovery disputes (*see e.g.,* 1/19/18 Motion to Compel (dkt. # 74); 4/26/18 Motion to Compel (dkt. # 85); 7/25/18 Statements Re: Discovery (dkt. ## 107, 108); 8/2/18 Statements Re: Privilege Log (dkt. ## 112, 113); 8/2/18 Motion to Compel (dkt. # 115), and having afforded the parties an opportunity to object and receiving none, the Court appointed the undersigned as special master to assist with the most recent discovery disputes and "other discovery-related issues that may arise in this matter" (10/1/18 Order Re: Objection to Special Master (dkt. # 135); 10/10/18 Order Appointing Special Master (dkt. # 139)).

Currently before the special master is Eddie Bauer's filed Motion to Compel Production of Documents in Response to its Sixth Set of Requests for Production of Documents (dkt. # 137). Also before the special master is Veridian's request for the special master's assistance with respect to additional discovery related issues that it had with Eddie Bauer's production of documents (10/19/18 Email from Veridian's Counsel). The special master in turn requested letter briefs from Veridian and Eddie

//

REPORT AND RECOMMENDATION- 2

Bauer to be submitted by October 22 and 24, respectively, detailing the arguments for Veridian's discovery disputes (10/19/18 Email from Special Master).

After reviewing the parties' filed statements regarding Eddie Bauer's discovery dispute (dkt. ## 132, 133), Eddie Bauer's Motion to Compel (dkt. # 137), Veridian's Response (dkt. # 141), Eddie Bauer's Reply (dkt. # 144), Veridian's letter regarding its discovery disputes (10/22/18 Veridian Letter), and Eddie Bauer's response (10/24/18 Eddie Bauer Letter), the special master scheduled a telephonic hearing for November 5, 2018 and requested a brief reply letter from Veridian prior to the telephonic hearing (10/29/18 Email from Special Master).[1] Veridian's reply was received on November 1, 2018 (11/1/18 Email from Joseph Guglielmo).

At the conclusion of the hearing, the special master requested additional information from the parties to be exchanged by November 12, 2018 (11/6/18 Email from Special Master). In addition, the special master requested, and Eddie Bauer agreed to provide, a sampling of documents withheld based on its claims of privilege for an *in camera* review by the special master. The sampling of documents for review comprised of designations by Veridian's counsel and randomly selected documents by the special master. The sampling of documents was received by the special master for *in camera* review on November 30, 2018, together with a letter brief and declarations setting forth

//

---

[1] The hearing was transcribed by Seattle Deposition Reporters, LLC. The special master received the transcript from the hearing on November 15, 2018. The original transcript will be retained in accordance with the Court's Order Appointing Special Master (dkt. # 139).

REPORT AND RECOMMENDATION- 3

Eddie Bauer's basis for its claims of privilege. (11/30/18 Email from Dyanne Cho.) The letter brief and declarations were provided to counsel for Veridian on the same day. (*Id*.)

On December 26, 2018, the special master requested an update on whether the agreements made by the parties during the November 5, 2018 hearing had resolved the issue (12/26/18 Email from Special Master). The special master requested a response by December 27, 2018 (*id*.). Eddie Bauer responded on December 28, 2018 but Veridian's counsel did not respond. Having reviewed all the above submissions, the special master recommends that Eddie Bauer's motion to compel (dkt. # 137) be GRANTED in part and DENIED in part, as described herein. As to Veridian's request for additional assistance, the special master continues to review the sampling of documents provided by Eddie Bauer that it withheld on the assertion of privilege and will issue a separate recommendation to the Court on this issue and any other remaining issues raised by Veridian.

## BACKGROUND

Veridian's first complaint was filed on March 7, 2017. (Dkt. # 1.) Veridian's complaint is for a putative class action "on behalf of credit unions, banks, and other financial institutions that suffered injury as a result of a security breach" involving Eddie Bauer from about January 2, 2016, to July 17, 2016. (*See* SAC (Dkt. # 70) ¶ 1.) Veridian alleges that the breach compromised the financial data of thousands of customers at all of Eddie Bauer's 370 retail stores in the United States and Canada. (*Id*.) Veridian further alleges that the breach occurred because Eddie Bauer failed to

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

"adequately secure its data networks." (*Id*. ¶ 2.) Specifically, Veridian alleges that Eddie Bauer "systematically failed to maintain adequate data security measures, implement best practices, upgrade security systems, and comply with industry standards." (*Id*. ¶ 3.) Veridian contends that Eddie Bauer failed to mitigate the damage the breach caused and exacerbated the damage by failing to notify customers of the breach until about six weeks after it had occurred. (*Id*. ¶¶ 4-5.)

After the Court ruled on Eddie Bauer's Motion to Dismiss, finding that Washington law applied to Veridian's claims (11/9/17 Order (dkt. # 69) at 17), Veridian amended its complaint. In Veridian's amended complaint it asserts three state law claims for: (1) negligence; (2) violation of Washington's law addressing damages to financial institutions from the unauthorized cyber-intrusions at retailers, RCW 19.255.020; and (3) violation of Washington's Consumer Protection Act, RCW 19.86. (SAC at ¶¶ 119-148.) The crux of Eddie Bauer's motion to compel is to obtain documents from Veridian that reveal Veridian's baseline fraud before the Eddie Bauer breach to argue against a causal connection between Veridian's damages and Eddie Bauer's breach.

## ANALYSIS

### I.     Eddie Bauer's Motion to Compel (Dkt. # 137)

Eddie Bauer served its sixth request for production of documents on Veridian on May 21, 2018 ("Sixth RFP"). (Declaration of Dyanne Cho in Support of Motion to Compel ("Cho Decl.") (Dkt. # 138), Ex. 1.) Veridian served its responses on June 20,

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

2018. (*Id*. at Ex. 2 Plaintiff Veridian Credit Union's Responses and Objections to Defendant's Sixth Requests for Production of Documents ("Responses to Sixth RFP").) Eddie Bauer's counsel complied with LCR 37(a)(1)'s meet and confer certification. Since June, the parties have exchanged written correspondences and held two telephonic meet and confer conferences regarding Eddie Bauer's objections to Veridian's answers to discovery. Specifically, Eddie Bauer moves to compel Veridian to provide complete responses to RFP's 117-119, 122-127, 130-132, 135-143, and 149. (Mot. at 2.)

      ***a. Transaction Detail Reports, Transaction Journals, and/or Account Snapshot/Summaries (RFP Nos. 117-119)***

      Eddie Bauer seeks documents that would establish the date on which each of the payment cards Veridian claims were affected by the breach were reissued as EMV chip cards to support Eddie Bauer's argument that the Court must make individualized inquires in the causal link between its conduct and Veridian's reissuance costs. Eddie Bauer's argument is that it is entitled to the "transaction journals" showing whether the card was reissued because Veridian had an agreement with Visa to reissue cards as Visa-branded EMV cards or because of Eddie Bauer's data breach. (Mot. at 6.) Eddie Bauer argues that it needs the transaction journals because, according to Veridian's 30(b)(6) witness, Trina Becker, these transaction journals show the date a member's card was reissued and what type of card was issued (*i.e.*, EMV or non-EMV card). (Cho Decl., ¶ 11, Ex. 11 Deposition of Trina Becker ("Becker Dep.") at 72:14-16.) Veridian counters that this information has already been provided to Eddie Bauer in other documents that show (1) the specific account number, (2) the specific date of

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

reissuance, and (3) whether the card was reissued as an EMV card. (Resp. at 4-6.) Veridian argues that the transaction journals Eddie Bauer seeks would require Veridian to pull out the relevant data – that it has already produced – and manually collect the information on a card-by-card or transaction-by-transaction basis. (Declaration of Trina Becker ("Becker Decl.") (Dkt. # 142), ¶ 9.) This process would be time-consuming, costly, and burdensome according to Veridian. (*Id*.) It would also be duplicative of what information has already been provided.

Eddie Bauer's response was that it was not aware of the fact that the information had already been provided by Veridian in a different format and that it was satisfied with the information that had been provided by Veridian. (Reply at 1.) Eddie Bauer argues, however, that during the meet and confer process Veridian did not direct Eddie Bauer's counsel to all the documents responsive to RFPs 117-119. (*Id*. at n.1.) Indeed, Veridian failed to identify approximately 100 documents that it now represents were responsive to RFPs 117-119 both in its answers to the Sixth RFPs and in its counsel's letter to Eddie Bauer during the meet and confer process. (Reply at 1 n.1; Responses to Sixth RFP at 11-13.)

It is inexplicable how – after numerous correspondence back and forth and at least two meet and confer conferences – Veridian's counsel failed to identify the responsive documents to RFPs 117-119 that had been requested by Eddie Bauer and apparently provided to it. This failure on Veridian's counsel's part caused Eddie Bauer to spend additional costs in bringing the issue to the Court's attention only to be told

REPORT AND RECOMMENDATION- 7

that the documents had been produced but had not identified as responsive. The failure

to identify the responsive documents after numerous attempts by Eddie Bauer to obtain

them or understand where they were located violated Fed. R. Civ. P. 34(b)(2)(E)(i).

Consistent with the Court's order that any further discovery disputes would result

in sanctions to the losing party (August 3, 2018 Minute Order), the special master

recommends that the Court order Veridian to pay Eddie Bauer's fees for bringing this

portion of the motion to compel. The special master recommends that the Court order

Eddie Bauer to file a declaration setting forth the reasonable fees it incurred in obtaining

this information by January 10, 2019.

### b. *Requests for Volume Reports (RFP Nos. 122, 123, 132), Loss Basis Reports (RFP Nos. 124, 125)*

Eddie Bauer requested documents from Veridian in its Sixth RFPs that would

help explain what Veridian's monthly fraud losses were for all its Visa-branded credit

cards as well as totals for all transactions (Veridian's "baseline fraud"). (Responses to

Sixth RFP at 13-18.) Eddie Bauer requested this information in May 2018. Eddie

Bauer's relevance argument is that Veridian will not be able to show a causal link

between the fraud loss suffered by Veridian and Eddie Bauer's data breach as opposed

to "normal, baseline fraud losses" that occur in the normal course of business. (Mot. at

8.)

Veridian objected to providing this information to Eddie Bauer on the grounds

that it was overbroad, unduly burdensome, not proportional to the needs of the

litigation, protected by attorney-client privilege or work-product doctrine, confidential,

REPORT AND RECOMMENDATION- 8

and because the requests required Veridian to produce documents after-the-fact. (*See generally* Responses to Sixth RFP at 16-18.) Veridian's final answer after the plethora of objections to these RFPs was to state "it has no documents in its possession" that provide the requested information. (*Id.*) However, Eddie Bauer's Sixth RFPs were served shortly after taking the 30(b)(6) deposition of Veridian and learning about these reports and learning that the 30(b)(6) deponent had the ability to pull these reports from its processor to view the baseline for reported fraudulent charges once a month. (Becker Dep. Ex. 11 at 32.)

Only after Eddie Bauer threatened to file its motion to compel did Veridian begin looking for the requested reports. Veridian's 30(b)(6) deponent, Trina Becker, submitted a declaration stating that it was only in late September 2018, when she first "understood Eddie Bauer to be asking Veridian to retrieve documents from third parties such as our processor" that she began "compiling volume reports and loss basis reports." (Becker Decl., (Dkt. # 142) ¶ 10.) The fact that the documents were with Veridian's processor did not alleviate it of its burden to make a reasonable inquiry of this agent to obtain the responsive documents. Fed. R. Civ. P. 34(a)(a party must produce documents which are in his "possession, custody or control"). "The phrase 'possession, custody or control' is in the disjunctive and only one of the numerated requirements need be met. Because control is defined as the legal right to obtain documents upon demand, actual possession of the requested document is not required." *Maria Del Socorro Quintero Perez, CY v. United States*, No. 13CV1417-WQH-BGS,

REPORT AND RECOMMENDATION- 9

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

2016 WL 705904, at *2 (S.D. Cal. Feb. 23, 2016) (internal citations and quotations omitted).

To be clear, Veridian admitted that it only began collecting the responsive reports over three months after it served its responses to the Sixth RFPs containing baseless objections to RFPs Nos. 122-125. At the teleconference hearing, Veridian's counsel agreed to provide these reports within two-weeks of the hearing. (Tr. at 9.) On November 12, 2018, Veridian's counsel confirmed that it was able to produce the reports on November 19, 2018 – almost five months after the Sixth RFP answers were served on Eddie Bauer and only after Eddie Bauer engaged in numerous meet and confer conferences, filed a statement with the Court requesting a hearing, and finally filing a motion to compel. Consistent with the Court's order that any further discovery disputes would result in sanctions to the losing party (August 3, 2018 Minute Order), the special master recommends that the Court order Veridian to pay Eddie Bauer's fees for bringing this portion of the motion to compel. The special master recommends that the Court order Eddie Bauer to file a declaration setting forth the reasonable fees it incurred in obtaining this information by January 10, 2019.

   c. *Request for Disputed Charge Reports (RFP Nos. 126-27)*

In RFP Nos. 126-127, Eddie Bauer requests "disputed charge reports" providing information on every disputed credit or debit charge from January 2015 to the present. (Responses to Sixth RFP at 18-19.) Veridian objected on several grounds but primarily that the request was overbroad as it seeks all disputed charges not limited to the Eddie

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

Bauer breach. (Resp. at 7.) According to Veridian, in order to produce "disputed charge reports," Veridian would be "required to produce a report for each and every charge that was disputed on any payment card for three and a half years, amounting to hundreds of thousands of disputed charges having nothing to do with the Data Breach." (Becker Decl., ¶ 12.) At the hearing, Veridian's counsel further explained that a "disputed charge report is a daily report that Veridian puts together that gives an explanation on every disputed charge that occurred on any given day at the credit union. And that would include any charge that was disputed for any reason. It doesn't have to be fraudulent." (Tr. at 16.)

Also, during the telephonic hearing, Eddie Bauer's counsel agreed to limit its request to disputed charge reports that Veridian claims occurred as a result of Eddie Bauer's breach. (Tr. at 28-29.) Veridian's counsel subsequently pointed out that Eddie Bauer had already produced this report to Veridian and that Eddie Bauer's counsel had explained this to Veridian's counsel during their meet and confer calls. (Tr. at 32.) Unfortunately, Veridian's counsel was not aware that the report she already had in her possession was the same report that she was requesting in her compromised version to RFP Nos. 126-27. The failure of the parties to effectively communicate regarding the disputed charge reports does not appear to be the result of any one party but rather a miscommunication. The special master finds that there was a legitimate discovery dispute on this issue, the special master does not recommend that fees be awarded with respect to this discovery response.

REPORT AND RECOMMENDATION- 11

1
2

### d. Requests for Documents Identifying the Date of Transactions and Specific Merchant for Each Fraud Loss Related to the Eddie Bauer Data Breach (RFP No. 130)

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

Eddie Bauer seeks "documents identifying the date of transaction and the specific merchant for each fraud loss" that Veridian claims was caused by Eddie Bauer's breach. (Responses to Sixth RFP at 21.) Veridian objected to the request on several grounds but primarily on the basis that it would require Eddie Bauer to produced duplicative documents and that the best sources for obtaining these documents is from the Card Brands themselves. (*Id.* at 21-22.) Veridian directed Eddie Bauer to VCU0000634, a General Ledger Loss Report, as the documents responsive to this discovery request. (Resp. at 9.) During the parties' meet and confer process, Eddie Bauer's counsel learned that the General Ledger Loss Report was only a summary of specific forms filled out by the customers or by Veridian when a customer is disputing a charge. (*See generally* Tr. at 42-46.) After the telephonic hearing on this issue, Veridian agreed to request the underlying customer dispute forms from its processor or notify the special master and Eddie Bauer that it would be too burdensome to produce these forms. (*Id.*) Veridian admitted that there were only about 1,000 forms to produce. (Tr. at 43.)

21
22
23
24
25
26

On November 12, 2018, Veridian confirmed that the customer dispute forms had been collected and would be produced to Eddie Bauer by November 19, 2018. (11/12/18 Letter from Veridian's counsel.) On December 28, 2018, Eddie Bauer's counsel confirmed that it had received the underlying forms to the General Ledger Loss Report. The underlying forms are highly relevant to the claims Veridian asserts against

27

REPORT AND RECOMMENDATION- 12

Eddie Bauer. The forms represent the details of the customer disputes relating to Eddie Bauer's data breach. Yet, Veridian waited over five months to even request these forms from its processer relying instead on what it admits is a summary of the customer dispute forms and claiming the underlying forms are duplicative of the summary. (Tr. at 44 ("What we produced was just sort of exporting the information [from the underlying forms] to a spreadsheet.")) Consistent with the Court's order that any further discovery disputes would result in sanctions to the losing party (August 3, 2018 Minute Order), the special master recommends that the Court order Veridian to pay Eddie Bauer's fees for bringing this portion of the motion to compel. The special master recommends that the Court order Eddie Bauer to file a declaration setting forth the reasonable fees it incurred in obtaining this information by January 10, 2019.

### e. *Requests for Documents Stating Whether PIN Used for Particular Transaction Relating to a Fraud Loss (RFP No. 131)*

Eddie Bauer seeks information for each transaction that Veridian attributes to the Eddie Bauer breach regarding whether a PIN was used for the debit card, as not all debit card transactions require a PIN. (Responses to Sixth RFP at 22.) Eddie Bauer argues that this is relevant because transactions using a PIN could not have been subject to the data-breach as the evidence is that PIN numbers were not compromised. (Mot. at 11.) Veridian objected to the RFP and failed to provide any documents responsive to the request for documents identifying whether a PIN was used in the relevant transaction. In addition to several general objections, Veridian claimed that it would have to create a document after-the-fact to provide a responsive document. (*Id.* at 25-26.) Almost three

REPORT AND RECOMMENDATION- 13

months after Veridian served its discovery responses, Eddie Bauer took the deposition of Veridian's 30(b)(6) deponent, Ms. Becker. During the deposition, Ms. Becker testified:

> Q: [W]hat record would I look at if I wanted to see a particular charge? Let's say a customer disputes a charge on a debit card, and I want to find out was a PIN number entered in connection with that transaction. What would I look for?
>
> A: That would be a report that would come from our processor, I believe.
>
> Q. What report?
>
> A. It would be a transaction detail report.
>
> Q. And what would I see on the report that would tell me whether a PIN number was entered or not?
>
> A. There would be a code. The transaction would have a code. I don't know what that code is, but I know that there's different codes based on the type of transaction.
>
> Q. All right. So if I wanted to find out – let's say I had a list of disputed charges from Veridian customers, and I wanted to find out which of those involved a debit card, and of those, which involved use of a PIN at the merchant and which didn't. Would I ask for a transaction detail report to get me that information?
>
> A. Yes.
>
> Q. Okay. Do I need any more of a description than transaction detail report?
>
> A. No, I don't believe so.

(Becker Dep. at 57-58.) According to Ms. Becker, the transaction detail report[2] is the accurate report that would identify whether a PIN had been used in the transaction.

---

[2] A "transaction detail report is a report that is issued for every single individual transaction that occurs on any payment card at the credit union." (Tr. at 16.)

REPORT AND RECOMMENDATION- 14

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

Veridian objected to producing the transaction detail report because it would need "to manually review each and every disputed charge report, compare such a report to transaction journals on a transaction-by-transaction basis, and then create documents that would be responsive." (Resp. at 9.) Veridian estimates that this would take 100 hours of Veridian staff time. (*Id.*)

During the telephonic hearing, the special master requested Veridian's counsel to determine whether there was a less onerous way of identifying which of the transactions using a debit card also utilized a PIN number. (Tr. at 37.) In response, Veridian offered the following explanation: Veridian "has determined that it is not possible to identify whether a PIN was used. Veridian does not internally track whether a PIN is used in debit card transactions. Veridian, however, can verify that Visa does not require that any transaction $50 or less use a PIN number, such that all transactions identified, either on the fraud spreadsheet provided to Eddie Bauer (VCU0000634) or the client fraud files to be produced pursuant to RFP No. 130 above, for $50 or less did not require use of a PIN number." (11/12/18 Veridian Letter to Special Master.) Veridian also contacted its payment card processor during the relevant time period, to determine if it retained this information but, according to Veridian, the processor would not cooperate. (11/12/18 Veridian Letter to Special Master.)[3]

//

---

[3] During the telephonic hearing, Eddie Bauer also agreed to review its own transaction records to determine if it had a record of whether a PIN was used in a particular transaction. (Tr. at 35-36.) Eddie Bauer subsequently confirmed that it did not possess these records. (11/14/18 Eddie Bauer Letter to Special Master.)

REPORT AND RECOMMENDATION- 15

MICHELLE PETERSON LAW, PLLC
1420 FIFTH AVENUE, SUITE 2200
SEATTLE, WA 98101

It appears that there are three ways for Veridian to provide the information reasonably requested by Eddie Bauer: (1) provide the transaction detail reports for the relevant period and let Eddie Bauer sort through them to determine which disputed debit card transactions used a PIN; (2) require Veridian to spend the 100 hours of staff time to cull out the disputed debit card transactions that utilized a PIN; or, as suggested by Eddie Bauer's counsel, (3) for every disputed debit card transaction over $50 Veridian produce the transaction detail report for that transaction so that Eddie Bauer can confirm a PIN was used (12/28/18 Email from Eddie Bauer's Counsel to Special Master.) If Veridian chooses to produce documents consistent with option three, then it shall also certify in a declaration that debit transactions under $50 did not require a PIN as it represented in its letter to the special master.

The special master recommends that Veridian have until January 10, 2019, unless there is an objection, to decide how to produce the requested information and that it be produced on that date as well. The special master finds that there was a legitimate discovery dispute on this issue, the special master does not recommend that fees be awarded with respect to this discovery response.

### f. *Documents Relating to Other Data Breaches (RFP Nos. 135-143 & 149)*

Eddie Bauer seeks documents relating to other data breaches affecting Veridian's customers primarily to determine whether the reissuance cost incurred by Veridian was due to the Eddie Bauer breach or another breach. Veridian objected to the original request from Eddie Bauer as overly broad in that Eddie Bauer sought information

REPORT AND RECOMMENDATION- 16

relating to data breaches as far back as 2013. (Responses to Sixth RFP at 25-30.) The exposure window relevant to the Eddie Bauer breach is January 2, 2016 to July 17, 2016. (SAC at ¶ 1.) Veridian argues that data breaches outside this window are not relevant to the inquiry as to whether the reissuance cost was due to the Eddie Bauer breach or another breach. With respect to data breaches that occurred near or in the Eddie Bauer breach window, Veridian refers to the requested discovery as "impermissible 'piggyback' discovery" citing cases outside the jurisdiction. (Responses to Sixth RFP at 25-30)

During the telephonic hearing, however, the parties agreed that Veridian would provide documents relating to data breaches for the Wendy's breach and the Noodles & Company breach because these breaches overlap with the Eddie Bauer breach and are relevant to the determination of causation. (Tr. at 50-52.) Eddie Bauer's counsel also requested documents relating to the Hotel Continental breach that occurred a month or so after the Eddie Bauer breach window but Veridian did not agree to produce those documents. (*Id.*) The special master does not recommend that the Court order Veridian to produce the documents relating to the Hotel Continental breach as Eddie Bauer has not articulated the relevance of those documents to its own data breach occurring months before the Hotel Continental breach.

In its December 28 email, Eddie Bauer's counsel confirmed that it had received documents Veridian has identified as "CAMS" card lists and fraud spreadsheets and documents regarding damages attributable to the Wendy's and Noodles & Company

REPORT AND RECOMMENDATION- 17

breaches. (12/28/18 Email from Eddie Bauer Counsel to Special Master.) Eddie Bauer notes, however, that Veridian has produced spreadsheets in connection with the Eddie Bauer breach, which purport to provide individual transaction information (date, member, amount of transaction, whether debit or credit) for those transactions that Veridian claims were fraudulently made and attributable to the Eddie Bauer breach. (*Id.*) A spreadsheet produced by Veridian (VCU640) in connection with the Noodles & Company breach seems to provide the same type of information. (*Id.*) Veridian did not provide a similar type of document in connection to the Wendy's breach. (*Id.*) Eddie Bauer requests that Veridian produce this document if such a document exists. The special master recommends that the Court order the production of a similar document to VCU640 relating to the Wendy's breach if it exists by January 10, 2019.[4] The special master finds that there was a legitimate discovery dispute on this issue, the special master does not recommend that fees be awarded with respect to this discovery response.

## II.   Veridian's Discovery Disputes

Neither party objected to Veridian's disputes being heard by the special master in a filing on the Court's docket. (*See* Order Appointment Special Master at ¶ 6.) The primary dispute brought to the special master by Veridian relates to Eddie Bauer's privilege logs. The special master has received the sampling of documents to review and

---

[4] With respect to whether Veridian received any GCAR credits, Veridian's counsel represented to the special master and Eddie Bauer that Veridian has not received any GCAR credits relating to the Eddie Bauer breach; if it does receive any GCAR credits it will immediately provide documentation of such to Eddie Bauer. (Resp. at 11; Tr. at 56-57.)

REPORT AND RECOMMENDATION- 18

the arguments in support of privilege and will file a separate report and recommendation covering those issues.

With respect to the remaining issues raised by Veridian, the special master requested an update on the status of the agreements made by the parties during the telephonic hearing. Although the special master requested the update on or before December 27, due to Eddie Bauer's counsel's leave of absence it could not provide a response to whether it had complied with its agreements. Veridian's counsel did not respond. Accordingly, the special master will issue a separate report and recommendation once the parties have updated the special master with the status of the dispute.

## CONCLUSION

Objections to this Report and Recommendation, if any, should be filed with the clerk and served upon all parties to this suit by no later than Thursday, **January 10, 2019**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the Court's motion calendar for the second Friday after they are filed in accordance with LCR 7(d)(2). If no timely objections are filed, the matter will be ready for consideration by the Court on **January 11, 2019**.

//

//

//

REPORT AND RECOMMENDATION- 19

1      DATED this 31st day of December, 2018

2

3

4                          MICHELLE PETERSON LAW, PLLC

5

6       By _____

                         Michelle Peterson, WSBA No. 33598

7                       Special Master

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

REPORT AND RECOMMENDATION- 20