The Honorable James L. Robart

1

2

3

4

5

6

7       UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF WASHINGTON
8                   AT SEATTLE

9

10   VERIDIAN CREDIT UNION, on behalf of itself
     and a class of similarly situated financial
11   institutions,

                                                    NO. 2:17-cv-00356-JLR
12                              Plaintiff,
            v.
13                                                  **PLAINTIFF'S UNOPPOSED**
     EDDIE BAUER LLC,                               **MOTION FOR PRELIMINARY**
14                                                  **APPROVAL OF CLASS ACTION**
                                Defendant.          **SETTLEMENT**
15
                                                    NOTE ON MOTION CALENDAR:
16
                                                    May 24, 2019
17

18

19

20

21

22

23

24

25

26

27   PLAINTIFF'S UNOPPOSED MOT. FOR PRELIMINARY APPROVAL OF CLASS
     ACTION SETTLEMENT (2:17-cv-00356-JLR)

## I.     INTRODUCTION

Plaintiff Veridian Credit Union ("Plaintiff" or "Veridian") moves under Fed. R. Civ. P. 23(e) for preliminary approval of a proposed class action settlement entered into with Defendant Eddie Bauer, LLC's ("Defendant" or "Eddie Bauer"). The Settlement Agreement between Veridian and Eddie Bauer was reached after almost two years of litigation, discovery, and negotiation, culminating in mediation supervised by a neutral mediator.

Under the agreement, Eddie Bauer will pay between $1 million and $2.8 million to Class Members, enough to ensure that all Class Members who submit claims will receive a minimum of $2.00 per "Alerted on Payment Card." In the event that the aggregate value of claims submitted is less than $1 million using the $2.00 per card, the amount will be increased *pro rata* until the aggregate value of claims reaches $1 million. In addition, Eddie Bauer will commit up to $2 million to pay costs of settlement administration, attorney fees and expenses, and a service award to Plaintiff for its time and commitment to the action. Notably, as part of the Settlement, Eddie Bauer will implement specific security enhancements for a minimum of two years at an expected cost totaling approximately $5,000,000. In exchange, Plaintiff and all Class Members who do not opt out of the settlement will release Eddie Bauer from liability for the claims asserted in this litigation and any claims related to or arising out of the cyber attack on Eddie Bauer's stores.

Plaintiff moves the Court to: (1) preliminarily approve the Settlement Agreement as fair, reasonable, and adequate; (2) provisionally certify the Class under Rule 23(b)(3) and (e) for settlement purposes; (3) preliminarily approve the form, manner, and content of the proposed notices to the Class; (4) conditionally appoint Veridian as Class Representative for settlement purposes; (5) conditionally appoint Scott + Scott Attorneys at Law, LLP and Carlson Lynch, LLP as Class Counsel for settlement purposes; (6) set the date and time of the Final Fairness Hearing; and (7) stay all proceedings in the Action until final approval of the settlement.

Plaintiff requests that the Motion, which Eddie Bauer's does not oppose, be granted. The Settlement meets all of the standards for preliminary approval. The information provided is

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

sufficient to permit the Court to provisionally certify the Settlement Class under Rule 23 and direct Plaintiff to have notice disseminated. The Notice Program – consisting of individualized mailed notice, publication notice, and a toll-free number and website maintained by the Settlement Administrator – is the best practicable notice and comports with both Rule 23 and due process. For the reasons argued below, the Court should grant the motion and authorize notice of the proposed settlement to be disseminated to proposed class members.

## II.    FACTUAL BACKGROUND

### A.    History of the Litigation

Plaintiff alleges that in January 2016, hackers accessed Eddie Bauer's POS systems and installed malicious software (often referred to as "malware") that infected every Eddie Bauer store in the United States and Canada (hereinafter, the "Cyber Attack"). CAC (Dkt. # 36) at ¶ 29. With this malware, hackers allegedly stole payment card data from Eddie Bauer's systems and sold it to other individuals who made fraudulent transactions on those payment cards. CAC ¶¶ 7, 25, 29, 32, 35–36, 96–97. Plaintiff, like the proposed nationwide class of financial institutions, issued payment cards allegedly compromised in the Cyber Attack, and suffered financial loss in connection with covering customers' fraud losses and reissuing the compromised cards. ¶¶ 8, 22, 96–98, 135. Plaintiff brought suit against Eddie Bauer, filing the original complaint on March 7, 2017. (Dkt. # 1).

Plaintiff alleged the Cyber Attack and Plaintiff's injury were the foreseeable result of Eddie Bauer's minimalistic data security measures—which were known within the company to be insufficient to protect against recognized threats—and refusal to implement industry-standard security measures because they cost too much. ¶¶ 39–92. Plaintiff brought this action to recover its losses caused by Eddie Bauer's negligence and violations of the Washington Consumer Protection Act ("CPA") and data breach notification law, Wash. Rev. Code ("RCW") § 19.255.020, and for declaratory and injunctive relief.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

On June 15, 2017, Eddie Bauer moved to dismiss the Complaint (the "Motion to Dismiss"). (Dkt. # 40). On July 24, 2017, Veridian filed its opposition to the Motion to Dismiss. (Dkt. # 53). On November 9, 2017, the Court denied Eddie Bauer's Motion to Dismiss ("Order"). (Dkt. # 69). On November 27, 2017, Plaintiff filed its Second Amended Class Action Complaint to conform to the Court's Order. (Dkt. # 70).

Thereafter, the Parties engaged in significant motion practice and discovery. In particular, Plaintiff served Eddie Bauer with document requests, and Eddie Bauer produced hundreds of thousands of pages of documents, which Plaintiff's counsel reviewed. Lynch Decl. ¶ 9. Plaintiff also deposed Eddie Bauer's corporate representatives pursuant to Federal Rule of Civil Procedure 30(b)(6) and deposed nine party and non-party fact witnesses. *Id.* Additionally, Plaintiff obtained and reviewed tens of thousands of pages of documents from numerous third parties in response to subpoenas Plaintiff served, including subpoenas served on the major card brands. *Id.* Eddie Bauer served Plaintiff with 164 document requests, to which Veridian responded with the production of thousands of pages of responsive documents. *Id.* Eddie Bauer also deposed Veridian's corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6). *Id.*

### B.    Negotiations and Settlement

The proposed settlement is the result of good faith, arm's-length negotiations. During the litigation, the Parties engaged in multiple direct discussions about possible resolution. *Id.* at ¶ 10. The Parties then participated in a full-day, in-person mediation session before Hon. Jay C. Gandhi (Ret.) on February 15, 2019 in Los Angeles. *Id.* Prior to the mediation, the parties exchanged detailed confidential mediation statements setting forth their respective positions as to liability and damages. At the mediation, the parties were able to reach agreement on the core terms necessary to resolve the case on a class-wide basis. *Id.*

The parties did not discuss with one-another attorneys' fees, costs, or expenses prior to reaching agreement on the essential terms of the settlement. *Id.* at ¶ 11. The parties then

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

formalized the terms of their proposed settlement in a full settlement agreement, which is attached as Exhibit A to the Declaration of Gary F. Lynch. *Id.* at ¶ 10, Ex. A.

## III.   TERMS OF THE PROPOSED SETTLEMENT

### A.   The Settlement Class

For settlement purposes only, the Parties agree that the Court should certify the following "Settlement Class" under Fed. R. Civ. P. 23(b)(3), defined as:

> All banks, credit unions, financial institutions, and other entities in the United States (including its Territories and the District of Columbia) that issued Alerted on Payment Cards. Excluded from the Settlement Class is the judge presiding over this matter and any members of his judicial staff, Eddie Bauer, and persons who timely and validly request exclusion from the Settlement Class.

SA ¶ 34. For purposes of the settlement and interpreting the class definition, the term "Alerted on Payment Card" means any payment card (including debit and credit cards) that was identified as having been at risk as a result of the Cyber Attack in an alert or similar document by Visa, MasterCard, Discover, or JCB, including without limitation: (i) in an alert in the Visa US-2016-0665 series (*e.g.*, US-2016-0665a-PA, US-2016-0665b-PA, US-2016-0665c-PA, US-2016-0665d-PA, US-2016-0665e-IC, US-2016-0665f-IC, US-2016-0665g-IC, US-2016-0665h-IC); (ii) in an alert in the MasterCard ADC001253-16 series; (iii) in an alert in the Discover DCA-USA-2016-6710 series; or (iv) in an alert or similar document by JCB similar to the foregoing Visa and MasterCard alerts. SA ¶ 1. Based on information learned in discovery, there are approximately 1.4 million Alerted on Payment Cards. Lynch Decl. ¶ 13.

### B.   Benefits to the Settlement Class

Under the proposed settlement, Eddie Bauer agrees to pay class members a minimum total of $1,000,000 and a maximum total of $2,800,000. SA ¶ 33a. The monetary relief will be distributed on a "claims made" basis. Each settlement class member that submits an approved claim will receive $2.00 per Alerted on Payment Card. *Id.* If the value of all approved claims is less than $1,000,000 (using the $2.00-per-card rate), then the per-card payment amount will be

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

increased *pro rata* until the total value of claims reaches $1,000,000. *Id.*; *see also* Lynch Decl. at ¶ 13 (describing example formulas).

Eddie Bauer has also agreed to injunctive relief for a period of two years from the Effective Date. Consistent with its obligations to comply with the Payment Card Industry Data Security Standard (PCI DSS), Eddie Bauer will maintain a comprehensive information security program that is reasonably designed to protect the security, integrity, and confidentiality of payment cardholder data. This compliance will continue to contain administrative, technical, and physical safeguards consistent with the PCI DSS, which are intended to protect the cardholder data environment. These measures described in detail at SA ¶ 42. These measures will be maintained for at least two years following the Effective Date of the Settlement, subject to reasonable exceptions. SA ¶ 43. Eddie Bauer expects that the costs associated with maintaining these provisions and compliance with PCI DSS since the Cyber Attack, combined with the costs of these measures for at least two years, exceeds $5 million. SA ¶¶ 33c, 42.

**C.    Releases**

In exchange for the consideration above, Plaintiff and the class members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Eddie Bauer and related persons and entities from claims arising from or related to the Cyber Attack at issue in this Litigation. SA ¶¶ 61–62, 64. In turn, Eddie Bauer and its affiliated persons and entities will also release any potential claims or counterclaims against Plaintiff, Settlement Class Members, and their affiliated entities relating to the initiation, prosecution, or settlement of the Litigation. SA ¶ 63.

**D.    Proposed Notice Plan**

Subject to the Court's approval, the Parties propose to individually notify each Settlement Class Member through U.S. Mail and to have the Settlement Administrator establish a toll-free number and Settlement Website to provide information about the Settlement. SA ¶¶ 49–50; Simmons Decl. ¶¶ 14, 18–19. Settlement Class Members will be able to file claims both

PLAINTIFF'S UNOPPOSED MOT. FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (2:17-cv-00356-JLR) - 5

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ♦ FAX 206.682.2992

electronically and by mail. SA ¶¶ 34, 50(b), 50(f). Publication notice through digital media also will be utilized. SA ¶ 50(c). During the claims period, Settlement Class Members that have not filed claims will receive at least one reminder notice. SA ¶ 50(d).

### 1. Direct Mail Notice

For purposes of effectuating individualized Mail Notice, Class Counsel have arranged for Visa and MasterCard to submit to the Settlement Administrator the legal address of the financial institutions that issued an Alerted on Payment Card. Lynch Decl. ¶ 14. Class Counsel also will provide relevant contact information to the Settlement Administrator for financial institutions that issued Discover and JCB Alerted on Payment Cards. *Id.* The Settlement Administrator will use this data, along with other reasonably available sources, to compile a final list of potential Settlement Class Members to which Mail Notice will be issued. SA ¶¶ 50(a)-(b); Simmons Decl. ¶ 13.

For any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Mail Notice to the updated address as indicated. SA ¶ 50(b); Simmons Decl. ¶ 15. For any Mail Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses (such as running the mailing address through the National Change of Address Database) and re-mail the Mail Notice to the extent updated addresses are identified. SA ¶ 50(b); Simmons Decl. ¶¶ 14–15. The Settlement Administrator need only make one attempt to re-mail any Mail Notices that are returned as undeliverable. SA ¶ 50(b). However, during the claims period, Settlement Class Members that have not filed claims will receive a postcard reminder. SA ¶ 50(d).

Mail Notice will consist of the Long-Form Notice, as well as the Claim Form. The Long-Form Notice (SA Ex. 2) includes a description of the material terms of the Settlement; a date by which Settlement Class Members may object to or opt out of the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the Settlement Website at which

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Settlement Class Members can submit a Claim Form and access the Settlement Agreement and other related documents and information.

The Claim Form (SA Ex. 1, Attachment A) clearly informs the Settlement Class Members of the process they must follow. It is only two pages long and requires Settlement Class Members to provide very basic information: the name of the financial institution; the person filing out the form; the financial institution's contact information; and the number and brands of Alerted on Payment Cards. This information will be easy for financial institution employees to locate and provide. A substantially similar form will appear on the Settlement Website for purposes of electronically submitting a claim.

### 2.    Publication Notice

The Settlement Administrator will cause the proposed Summary Notice to be published in digital publications typically read by bank and credit union executives, such as the *ABA Banking Journal*, in the form depicted in SA Ex. 3. SA ¶ 50(c); Simmons Decl. ¶ 17.

### 3.    Settlement Website and Telephone Support

The Settlement Administrator also will establish the Settlement Website, which will contain all the information included in the other forms of notice and will provide links to pertinent case documents. SA ¶¶ 34, 46, 47(c), 49, 50(f); Simmons Decl. ¶¶ 19–20. The Settlement Website will permit Settlement Class Members to file claims electronically and will allow Settlement Class Members to submit questions regarding the Settlement to customer support personnel. SA ¶¶ 34, 50(f); Simmons Decl. ¶¶ 19–20. The Settlement Administrator also will establish a toll-free number Settlement Class Members can call for information about the Settlement. SA ¶¶ 46, 47(d), 50(e); Simmons Decl. ¶ 18.

### 4.    Opt-Out and Objection Deadlines

All forms of notice: (1) explain the procedure by which a Settlement Class Member can exclude itself from the Settlement prior to the Opt-Out Deadline (SA ¶ 51); and (2) explain the procedure for a Settlement Class Member to object to the Settlement or Class Counsel's applications for awards of attorneys' fees, expenses, or Service Awards to Settlement Class

PLAINTIFF'S UNOPPOSED MOT. FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (2:17-cv-00356-JLR) - 7

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   Representatives prior to the Objection Deadline. SA ¶ 53. The proposed Opt-Out and Objection

2   Deadlines are 90 and 114 days, respectively, after the date the Court enters a Preliminary

3   Approval Order. SA ¶¶ 19–20.

4         **E.**      **Attorneys' Fees and Expenses, Administration Expenses, & Service Award**

5         In addition to the settlement consideration available for direct distribution to claiming

6   Settlement Class Members, Eddie Bauer agrees to pay up to $2,000,000 to cover the following

7   items: 1) costs of settlement administration; 2) any Court-approved service award to the Plaintiff,

8   not to exceed $10,000; and 3) any Court-approved attorneys' fees, costs, and expenses. SA ¶¶

9   33(b), 39(b), 40, 66. The effectiveness of the Settlement Agreement is not contingent on the

10  Court's awarding of the full amounts of the requested service award or attorneys' fees, costs, or

11  expenses. SA ¶¶ 67.

12  **IV.**      **THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

13        **A.**      **Standard for Preliminary Approval of the Settlement**

14        The Ninth Circuit recognizes the "strong judicial policy that favors settlement,

15  particularly where complex class action litigation is concerned." *In re Syncor ERISA Litigation*,

16  516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277 (9th

17  Cir. 1992). The strong preference for class action settlements is precipitated by the overwhelming

18  uncertainties of the outcome, expense, management, and difficulties in proof inherent in class

19  action lawsuits. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (noting

20  that class action settlements are especially favorable in light of "an ever increasing burden to so

21  many federal courts and which frequently present serious problems of management and

22  expense.").

23        Approval of class action settlement "take[s] place over three stages. First, the parties

24  present a proposed settlement asking the Court to provide 'preliminary approval' for both (a) the

25  settlement class and (b) the settlement terms." *Rinky Dink Inc. v. Electronic Merchant Systems*

26  *Inc.*, No. C13-1347, 2015 WL 11234156 *1 (W.D. Wash. Dec. 11, 2015). "Second, if the court

27

PLAINTIFF'S UNOPPOSED MOT. FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (2:17-cv-00356-JLR) - 8

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

does preliminarily approve the settlement and class, (i) notice is sent to the class describing the terms of the proposed settlement, (ii) class members are given an opportunity to object or opt out, and (iii) the court holds a fairness hearing at which class members may appear and support or object to the settlement." *Id.* "Third, taking account of all of the information learned during the aforementioned processes, the court decides whether or not to give final approval to the settlement and class certification." *Id.*; *see also In re Toys R Us-Delaware, Inc.—Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 448 (C.D. Cal. 2014). At the final approval stage, the court considers the settlement in light of a non-exhaustive list of factors, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004); *see also Hanson v. MGM Resorts Int'l*, No. 16-cv-1661-RAJ, 2018 WL 3630284 at *4 (W.D. Wash. July 31, 2018) (utilizing first six factors to assess fairness for purposes of preliminary approval).

At the preliminary approval stage, the focus is simply on whether the settlement is "within the range of possible judicial approval." *In re M.L. Stern Overtime Litigation*, No.07-CV-0118-BTM (JMA), 2009 WL 995864 at *3 (S.D. Cal. Apr. 13, 2009) (citations and quotation marks omitted); *Rinky Dink*, 2015 WL 11234156 at *4. Accordingly, the court need not scrutinize every detail of the settlement at this juncture, since "class members will subsequently receive notice and have an opportunity to be heard" at the time before final approval. *In re M.L. Stern*, 2009 WL 995864 at *3.

The standard inquiry the trial court explores is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); Fed. R. Civ. P. 23(e)(2). "It is the settlement taken as a whole, rather than the

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)); *see also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) ("[A] full fairness analysis is unnecessary" at the preliminary approval stage). Accordingly, the court does not have "the ability to delete, modify or substitute certain provisions." *Id.* (citing *Officers for Justice*, 688 F.2d at 630). In other words, the "settlement must stand or fall in its entirety." *Id.*

Before the Court can grant preliminary approval and direct notice to the class, a plaintiff must "show[] that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)[.]" Fed. R. Civ. P. 23(e)(1)(B) (eff. Dec. 1, 2018). Approval under amended Rule 23(e)(2) requires that the settlement be fair, reasonable, and adequate, taking into consideration the following factors: (1) whether "the class representatives and class counsel have adequately represented the class"; (2) whether the settlement "was negotiated at arm's length"; (3) whether "the relief provided for the class is adequate"; and (4) whether the settlement "treats class members equitably relative to each other." *Id.* (e)(2)(A)-(D); *see also In re Chrysler-Dodge Jeep Ecodiesel Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 17-md-2777, 2019 WL 536661 at *8 (N.D. Cal. Feb. 11, 2019). There is, not surprisingly, overlap between the 2018 amendment's fairness, reasonableness, and adequacy considerations and those set out in the Ninth Circuit test in *Churchill Vill.*, 361 F.3d at 575. Indeed, these factors are substantially similar to those that were already considered by courts in the Ninth Circuit. *E.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (considering preliminary approval appropriate "where [1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies; [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval . . . .") (internal quotation and citation omitted) (emphasis added).

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Amended Rule 23(e)(2), however, establishes a uniform set of core approval factors that the Advisory Committee Note states "should always matter to the decision" of the district court as to whether to approve the proposal. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Plaintiff will predominantly address the amended Rule 23(e) factors now and fully address each of the *Churchill Vill.* factors in its motion for final approval of the Settlement.

For the reasons set forth in detail below, the proposed Settlement is fundamentally fair, adequate, and reasonable—falling squarely into the range of preliminary approval.

### B.     The Negotiation Process Supports Preliminary Approval

The Ninth Circuit instructs courts to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625). Perhaps the most critical inquiry to the assist the court is determining whether the settlement is "the product of an arms-length, non-collusive, negotiated resolution." *Id.* If the answer is yes, courts will presume the settlement is fair and reasonable. *Spann II*, 314 F.R.D. at 324. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Federal Express Corp.*, Nos. C03-2659 SI, C03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Here, there is no evidence that this Settlement was founded in collusion or fraud. Rather, agreement was reached after dispositive motions practice, significant discovery, and an in-person mediation session facilitated by a highly-experienced mediator, Hon. Jay C. Gandhi (Ret.). Lynch Decl., at ¶ 10. Moreover, both parties were represented by counsel highly-experienced in complex class litigation, which lent to the careful consideration of all strengths and weaknesses in order to achieve efficient resolution. Thus, the Parties were well-versed with the relevant law, the challenges present in calculating damages on a class-wide basis, and the risks of continued litigation and recovery. Accordingly, all evidence indicates that this Settlement was ***not*** "the product of fraud or overreaching by, or collusion between, the negotiating parties." *Spann II*, 314

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   F.R.D. at 324–25.

2       **C.    The Settlement Falls Within the Range of Possible Judicial Approval Because
             the Value of the Settlement Benefits Are Significant in Light of the Risks of
3            Continued Litigation**

4       This Settlement provides significant relief to the Class and clearly falls within the range

5   of possible judicial approval. "To evaluate the range of possible approval criterion, which focuses

6   on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery

7   balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp.

8   2d at 1080. "As the Ninth Circuit has noted, 'the very essence of a settlement is compromise, a

9   yielding of absolutes and an abandoning of highest hopes.'" *Spann II*, 314 F.R.D. at 325 (quoting

10  *Officers for Justice*, 688 F.2d at 624).

11      When considering whether "the relief provided for the class is adequate," amended Rule

12  23(e)(2)(C) requires the Court to take into account: "(i) the costs, risks, and delay of trial and

13  appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including

14  the method of processing class-member claims; [and] (iii) the terms of any proposed award of

15  attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(i)-(iii) (eff. Dec. 1,

16  2018).[1]

17      **1.    The Relief Provided to the Settlement Class Is Substantial**

18      The Settlement provides substantial relief to the Settlement Class. Class Members who

19  submit claims will receive no less than $2.00 per Alerted on Payment Card. SA ¶ 33a. In addition,

20  Eddie Bauer has agreed to implement certain security enhancements for at least two years, which

21  Eddie Bauer has spent or will spend approximately $5 million to implement and which will

22  benefit Class Members by reducing the risk of a similar security breach in the future. SA ¶¶ 41–

23  43. This relief compares favorably with settlements obtained in similar litigation, namely the

24

25  ─────────────────
    [1] Rule 23(e) also requires the Court to consider "any agreement required to be identified under Rule 23(e)(3)[.]"
26  Other than the settlement agreement at issue, and the separate agreement referenced in SA ¶ 70 regarding Eddie
    Bauer's discretion to terminate the Agreement in the event that Settlement Class Members representing a certain
    number of Alerted on Payment Cards elect to opt out of the Settlement Class, there are no other agreements to
27  disclose. Lynch Decl. ¶ 22.

─────────────────
PLAINTIFF'S UNOPPOSED MOT. FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (2:17-cv-00356-JLR) - 12

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    settlements negotiated by financial institution plaintiffs with Target and Home Depot. Those

2    settlements—both of which received final approval—provided financial institutions with $1.50

3    and $2.00 fixed per-card recovery, respectively, without documentation of loss (with an option

4    to obtain a percentage of documented losses). *See In re Target Customer Data Sec. Breach Litig.*,

5    No. 0:14-md-02522, Dkt. # 747-1, Ex. A at 4–5 (D. Minn. Apr. 11, 2016); *In re Home Depot*

6    *Customer Data Sec. Breach Litig.*, No. 1:14-md-02583, Dkt. # 336-1 at 25 (N.D. Ga. Aug. 23,

7    2017). The per-card relief offered by this settlement is reasonable in light of these prior results.

8                    **2.      The Risks of Continued Litigation Are Significant**

9            This recovery is significant not only because of the valuable benefit obtained for the

10   Class, but also because Plaintiff would have faced a significant risk in litigating this case through

11   trial. *See Hanson*, 2018 WL 3630284 at *4–5 (finding that uncertain outcome of litigated class

12   certification motion, difficulty of proving damages, and limited legal precedent on unique issues

13   posed risks to plaintiff's case and weighed in favor of settlement approval). Although the Court

14   denied in part Eddie Bauer's motion to dismiss and permitted Plaintiff's primary negligence

15   claim to proceed, numerous procedural hurdles and risks remained before Plaintiff or Settlement

16   Class Members could recover at trial. Class actions initiated by financial institutions against

17   merchants after data breaches are a relatively new form of litigation. While some cases ended in

18   settlements, such as *Target* and *Home Depot*, some have been dismissed, *e.g.*, *Cmty. Bank of*

19   *Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 817-18 (7th Cir. 2018), and class certification has

20   been denied in others. *E.g.*, *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass.

21   2007) (denying class certification because necessity of individualized inquiries regarding

22   causation, comparative negligence, and damages precluded a finding of predominance). To date,

23   no similar case has ever gone to trial.

24           Accordingly, although Plaintiff is confident in the strength of its case against Eddie Bauer

25   and the likelihood of success at each stage, the outcome is nonetheless uncertain. Moreover, even

26   if Plaintiff was successful the class certification and trial stages in the district court, there would

27

PLAINTIFF'S UNOPPOSED MOT. FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (2:17-cv-00356-JLR) - 13

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

very likely be one or more lengthy appeals, including potentially an interlocutory appeal under Fed. R. Civ. P. 23(f). The degree of uncertainty supports preliminary approval of the proposed Settlement Agreement.

Class Counsel have considered: (1) the complexities of this litigation; (2) the risks and expense of continuing this case through discovery, class certification, summary judgment, and trial against Eddie Bauer; and (3) the likely appeal(s) if Plaintiff does prevail at trial or earlier stages. After weighing these against the guaranteed recovery to the Settlement Class, and what Class Counsel believe to be the significant monetary benefits to the Settlement Class, Class Counsel firmly believe the Settlement represents a desirable resolution of this litigation. Lynch Decl. ¶ 19.

### 3. The Proposed Method of Distributing Relief to the Settlement Class Is Fair and Effective

Under the Distribution Plan (SA Ex. 1) that governs payments from the Settlement Fund, Settlement Class Members that file an Approved Claim will receive a Cash Payment Award per Claimed-On Card without having to provide supporting documentation or prove their losses. SA ¶ 39(a); SA Ex. 1 ¶¶ 2, 2.1. The amount of the cash payment will be $2.00 per Claimed-On Card, subject to a *pro rata* increase if the value of all approved claims does not meet the minimum payment amount of $1 million. SA Ex. 1 ¶¶ 2.1, 4.2. This Distribution Plan is straightforward and treats all Claiming Class Members identically.

The Claim Form is only two pages long and requires Settlement Class Members to provide very basic information: the name of the financial institution; the person filing out the form; the financial institution's contact information; and the number of Alerted on Payment Cards. *See* SA Ex. 1, Attachment A. This information will be easy for financial institution employees to locate and provide. No additional documentation is required. Furthermore, Settlement Class Members can chose to submit their claims electronically through the Settlement Website. SA ¶¶ 34, 50(f); Simmons Decl. ¶ 20(f). Based on their experiences with the settlement

PLAINTIFF'S UNOPPOSED MOT. FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (2:17-cv-00356-JLR) - 14

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

of other class action data breach cases on behalf of financial institutions, Class Counsel believes that the simplicity of the Claim Form will increase participation from Settlement Class Members. Lynch Decl. ¶ 15.

### 4. Counsel's Request for Attorneys' Fees, Expenses, and Costs Will Be Subject to Approval by the Court

Finally, the Settlement requires that any award for payment of attorneys' fees, expenses, and costs is subject to proper motion to, and approval by, the Court. Class Counsel will apply to the Court for an award of no more than $2 million inclusive of costs of settlement administration, a service award to Plaintiff (not to exceed $10,000), attorneys' fees, costs, and expenses. SA ¶¶ 39(b), 40, 66. Importantly, the Parties did not discuss attorneys' fees, costs, and expenses prior to agreeing to the essential terms of the Settlement. SA ¶ F; Lynch Decl. ¶ 11. No less than thirty days prior to the hearing on whether the Court should grant final approval to the Settlement, Class Counsel will submit a motion for attorneys' fees, expenses, and costs. SA ¶ 59. Settlement Class Members that have objected to the Settlement by the Objection Deadline will have an opportunity to file a brief in response to Class Counsel's request for attorneys' fees, expenses, and costs. *Id.* Thus, all the considerations under Rule 23(e)(2)(C) support preliminary approval.

### D. The Proposed Releases Are Appropriately Tailored to the Claims at Issue

"Beyond the value of the settlement, courts have rejected preliminary approval when the proposed settlement contains obvious substantive defects such as . . . overly broad releases of liability." *Newberg on Class Actions* § 13:15, at p. 326 (5th ed. 2014); *see e.g.*, *Fraser v. Asus Computer Int'l*, 2012 WL 6680142, *3 (N.D. Cal. 2012). The releases in the proposed settlement are not overly broad. Class Members who do not timely exclude themselves from the Settlement will be deemed to have released Eddie Bauer from claims:

> based upon, resulting from, or arising out of (1) Eddie Bauer's information security policies and practices; (2) the allegations, facts, and/or circumstances described in the Litigation and/or Complaint; (3) Eddie Bauer's response to and notices about the Data Breach; (4) the fraudulent use of any Alerted on Payment Cards; (5) the cancellation and reissuance of any Alerted on Payment Cards; and (6) any expenses incurred investigating, responding to, or mitigating potential damage from the theft

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1   or illegal use of Alerted on Payment Cards or information relating to such cards.

2   SA ¶ 61. Since the Release is limited to the scope of the litigation, it is fair and adequate for

3   preliminary approval. *See e.g.*, *Spann II*, 314 F.R.D. at 327–28 ("With this understanding of the

4   release, i.e., that it does not apply to claims other than those related to the subject matter of the

5   litigation, the court finds that the release adequately balances fairness to absent class members

6   and recovery for plaintiffs with defendants' business interest in ending this litigation with

7   finality.).

8   **E.      Equitable Treatment of Class Members Relative to Each Other Supports Preliminary Approval**

9   The Settlement Agreement authorizes Plaintiff Veridian to seek a Service Award in an

10   amount no greater than $10,000 for its service to the Class in bringing and pressing the lawsuit.

11   SA ¶ 66. Importantly, Plaintiff's incentive award is to be paid separate and apart from the Class

12   award, and any reduction of the incentive award by the Court shall not affect the rights and

13   obligations under the Settlement. *Id.* at ¶ 67. The Parties negotiated this aspect of the Settlement

14   Agreement only after reaching agreement on all other material terms of the settlement. *Id.* at ¶

15   68. In all other respects, the Settlement Agreement treats all Class Members, including Plaintiff,

16   identically and gives all Class Members the same opportunity to receive payments using the same

17   distribution method. SA ¶ 39(a); SA Ex. 1 ¶¶ 2, 2.1

18   The Ninth Circuit recognizes that service awards given to named plaintiffs are "fairly

19   typical" in class actions. *Rodriguez*, 563 F.3d at 958. Incentive awards serve  "to compensate

20   class representatives for work done on behalf of the class, to make up for financial or reputation

21   risk undertaken in bringing the action, and sometimes, to recognize their willingness to act as a

22   private attorney general." *Id.* at 958–59. In evaluating whether the Settlement grants preferential

23   treatment to Plaintiff, "the court must examine whether there is a 'significant disparity between

24   the incentive awards and the payments to the rest of the class members' such that it creates a

25   conflict of interest." *Spann II*, 314 F.R.D. at 328 (citing *Radcliffe v. Experian Info. Solutions*

26   *Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013)). In arriving at such determination, courts will consider

27

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

"the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental*, 779 F.3d 934, 947 (9th Cir. 2015) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

Here, the requested award is unlikely to create a conflict of interest between Plaintiff Veridian and absent Class Members because the Settlement Agreement will remain in full force and effect, notwithstanding any reduction of the awards. *See* SA ¶ 67; *Spann II*, 314 F.R.D. at 328–29. Veridian's requested award was not predicated on the existence of any special treatment or promise from Class Counsel. Lynch Decl. at ¶ 21. The basis for such award is purely to compensate Plaintiff for its time and efforts in initiating the lawsuit, staying abreast of all aspects of the litigation, cooperating in discovery, and fairly and adequately protecting the interests of the absent class members. *Id.* The award is also small compared to the overall settlement relief, representing just 0.33% of the minimum total cash Eddie Bauer is required to pay under the Agreement. Thus, the award is purely a service award and does not constitute preferential treatment.

## V.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED

### A.     The Proposed Class Satisfies the Rule 23(a) Requirements

At the preliminary approval stage, the Court's threshold task is to determine whether the proposed class satisfies the Rule 23(a) requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy, and the requirements set forth in Rule 23(b)(3). *Id.*, citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Here, when ruling on class certification in the settlement context, the court need not explore the issue of manageability, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Here, provisional certification of the proposed Class for purposes of the Settlement is warranted because Plaintiff satisfies all requirements set forth in Rule 23.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

### 1.   Numerosity

Numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 664 (C.D. Cal. 2009); *see also Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) ("impracticability" exists where there is a "difficulty or inconvenience of joining all members of the class"). "While no exact numerical cut-off is required for the numerosity requirement, numerosity is presumed where the plaintiff class contains forty or more members." *Chester,* 2017 WL 6205788, at *5 (internal quotation marks and citations omitted).

Numerosity is clearly established here. The Parties conducted pre-mediation discovery and investigation, wherein Defendant confirmed there are approximately 1.4 million potential Alerted on Payment Cards, and documents obtained in discovery allow Class Counsel to estimate that the Alerted on Payment Cards were issued by approximately 4,000 different financial institutions. *See* Lynch Decl. ¶ 13. Accordingly, because the Class Members are certainly too numerous to join as plaintiffs, the numerosity requirement is met.

### 2.   Commonality

Commonality is satisfied if "there are any questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2); *see Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 589 (9th Cir. 2012) (noting all that is required is a "***single*** significant question of law or fact.") (emphasis added); *Hanson*, 2018 WL 3630284 at *2 (same). The inquiry regarding commonality involves whether Plaintiff can show a common contention such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

Here, the Class Members share common legal and factual questions vis-à-vis Eddie Bauer's liability, for instance, whether Eddie Bauer owed Class Members a duty to use

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   reasonable payment card security practices, whether the duty was breached, and whether Eddie

2   Bauer's actions caused Class Members' alleged damages. As to damages, the proposed Class

3   Members each suffered the same general forms of injury: they all issued payment cards that were

4   alerted-on as potentially compromised in the Cyber Attack and incurred costs related to reissuing

5   the affected cards or reimbursing customers for fraudulent transactions on the card accounts. ¶¶

6   8, 22, 96–98, 135. These questions suffice to satisfy the commonality prong.

### 3. Typicality

8        Typicality is satisfied if the class representative's claims or defenses are typical to those

9   of the Class. Fed. R. Civ. P. 23(a)(3). The Ninth Circuit applies the typicality requirement

10  liberally: "representative claims are typical if they are reasonably coextensive with those of

11  absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020;

12  *Hanson*, 2018 WL 3630284 at *2. The "typicality" requirement is essential to ensure that the

13  claims of the class representative is aligned with those of the class as a whole. *Wolin v. Jaguar*

14  *Land Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "The test of typicality is

15  whether other members have the same or similar injury, whether the action is based on conduct

16  which is not unique to the named plaintiffs, and whether other class members have been injured

17  by the same course of conduct." *Id.*

18       As addressed immediately above, Plaintiff Veridian's claims are typical to those of the

19  Class because they are based upon the same facts and the same legal and remedial theories as

20  those of the Class. Plaintiff's and Settlement Class Members' claims arise from Eddie Bauer's

21  alleged failure to maintain adequate payment card data security measures at its retail stores. The

22  exposure of Plaintiff's and the Class's payment card data occurred through the same mechanism

23  during the same time period. Every Settlement Class Member suffered the same varieties and

24  types of risks and losses as a result of the Cyber Attack, and the only notable variation among

25  Settlement Class Members is the amount of damages each one suffered.

26

27

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

### 4.     Adequacy

Adequacy is satisfied if the class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit utilizes two questions to determine legal adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiff Veridian is an adequate class representative because it shares common goals with Class Members of pursuing litigation to obtain recovery for Cyber Attack-related losses and to incentivize merchants to improve payment card data security. There is no evidence in the record that Plaintiff harbors any interest antagonistic to the interests of the Class. Lynch Decl. at ¶ 18. Plaintiff has been proactive in this litigation, participating in extensive discovery efforts and maintaining close contact with Class Counsel regarding the progress of the litigation. *Id.* at ¶ 18. Therefore, the adequacy requirement is satisfied.

### B.     The Proposed Class Satisfies the Rule 23(b)(3) Requirements

Class actions under Rule 23(b)(3) must also satisfy the following two requirements, which are commonly referred to as "predominance" and "superiority," respectively: (1) "the questions of law and fact common to class members predominate over any questions affecting only individual members, and" (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3). Plaintiff has satisfied both of these requirements.

### 1.     Predominance

The predominance prong turns on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, F.3d at 1022 (citing *Amchem*, 521 U.S. at 623). Although predominance is inherently related to commonality in that it assumes a prerequisite of common issues of law and fact, "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Id.* (emphasis added). Where the core question driving the litigation

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   "would require the separate adjudication of each class member's individual claim or defense, a

2   Rule 23(b) action would be inappropriate." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d

3   1180, 1189 (9th Cir. 2001) (internal citation omitted).

4       Individualized damage variations among class members do not by themselves preclude a

5   finding of predominance. *See Hanson*, 2018 WL 3630284 at *3. First, a class may be certified

6   for liability purposes only, leaving individual damages calculations to subsequent proceedings.

7   *See Taha v. Cty. of Bucks*, 862 F.3d 292, 309 (3d Cir. 2017); W. Rubenstein, NEWBERG ON

8   CLASS ACTIONS §4:54, 206-08 (5th ed. 2012). Second, a plaintiff class may prove classwide

9   damages through use of representative evidence and statistical modeling, provided that the

10  methodology offered is mathematically sound and comports appropriately with the plaintiffs'

11  liability theory. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047-49 (2016); *Comcast*

12  *Corp. v. Behrend*, 569 U.S. 27, 35-37 (2013). Apportionment and disbursement of the classwide

13  damages to individual class members can be accomplished at a later stage without undermining

14  the propriety of class certification during earlier phases. *See Tyson Foods*, 136 S. Ct. at 1049–

15  50.

16      The predominate legal and factual issues in this litigation concern the nature of the Cyber

17  Attack and Eddie Bauer's degree of responsibility. The most significant remaining issues to be

18  litigated or tried with respect to liability were the extent of Eddie Bauer's legal duty to Plaintiff

19  to protect payment card data; whether Eddie Bauer breached the duty of reasonable care; whether

20  Eddie Bauer's acts or omissions were the proximate cause of Plaintiff's injuries; and proof of

21  damages. All of these issues could have been resolved on a classwide basis, with little to no

22  emphasis on unique circumstances of any individual Plaintiff or Class Member. *See, e.g., Target*,

23  309 F.R.D. at 486-89. These issues predominate, and the Settlement and Distribution Plan

24  proposed by Plaintiff ensure that individualized damage calculations do not pose a problem.

25  Settlement Class Members will receive fixed distributions from the Settlement Fund based on

26

27

PLAINTIFF'S UNOPPOSED MOT. FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (2:17-cv-00356-JLR) - 21

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

the number Alerted on Payment Cards, a methodology that is objective, easy to calculate, and offers fair and equal treatment to all Settlement Class Members.

### 2. Superiority

Superiority examines whether the class action device "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[T]he purpose of the superiority requirement is to assure that the class action is the most effective means for resolving the controversy. Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175–76 (citation and internal quotation marks omitted). In the settlement context, manageability of the class action device is not a concern. *See Spann II*, 314 F.R.D. at 323 ("the other requirements of Rule 23(b)(3) such as the desirability or undesirability of concentrating the litigation of the claims in the particular forum and the likely difficulties in managing a class action, are rendered moot and irrelevant"); *see also Amchem Prods., Inc.*, 521 U.S. at 620.

Although Settlement Class Members collectively suffered significant damages as a result of the Cyber Attack, those losses are distributed among several thousand card-issuing financial institutions. Lynch Decl. ¶ 13. Settlement Class Members who issued only a few Alerted on Payment Cards will have no incentive to litigate against Eddie Bauer individually, as their damages may only be a few hundred dollars. Even for larger issuers, the distributions offered by this Settlement likely provide better net recoveries than the Settlement Class Members could obtain by suing Eddie Bauer individually, after costs of litigation are considered. *See Hanson*, 2018 WL 3630284 at *3 (finding superiority prong met where individual class members' damages would be up to $1,000 because "many members would most likely refrain" from individual litigation due to disparity between litigation costs and expected recoveries). Accordingly, because each Class Members' claim is common to the class and relatively small in amount, a class action is the superior method for efficiently adjudicating Plaintiff's claims.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## VI.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS, AND SHOULD BE APPROVED

Rule 23(e) requires the trial court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). This requirement contemplates that class notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Toys R Us*, 295 F.R.D. at 448 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). A class action settlement notice is deemed "satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.*, 617 F.3d at 575.

The proposed notices provide sufficient information to satisfy these standards. *See* SA Exs. 2, 3. Each Notice clearly and conspicuously: identifies who is a Class Member; describes the factual background of the litigation and the Parties to the action; outlines Class Members' legal rights, including the right to either participate in the Settlement, exclude themselves, or object, and deadlines to pursue each available course of action; provides the amount of the benefit and details of the relief; states the amount of attorneys' fees and Plaintiff's incentive award requested by Class Counsel; and sets forth the contact information of the Claims Administrator. *See generally id.* The Full Notice includes a table of contents modeled in a "frequently asked questions" format and includes answers to questions such as, "How does a financial institution know if it is part of the settlement?" "What is the difference between objecting and excluding/opting out?," and "How can my financial institution get a payment?" *See* SA Ex. 2. This format constitutes adequate notice in that it is conducive to providing essential Settlement information to the Class. *See* 4 Newberg on Class Actions § 11:53, at p. 167 (4th ed. 2013) ("[N]otice is adequate if it may be understood by the average class member.").

Moreover, the multiple methods of providing notice to Class Members including direct mail and publication, are adequate and reasonably likely to ensure all Class Members are apprised of the Settlement terms and given an opportunity to file a claim, object, opt out, or be heard. *E.g.,*

PLAINTIFF'S UNOPPOSED MOT. FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (2:17-cv-00356-JLR) - 23

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Hanson*, 2018 WL 3630284 at *6 (finding direct notice and a settlement website to be best practicable notice); *Brotherson v. Prof'l Basketball Club, L.L.C.*, No. C07-1787 RAJ, 2010 WL 11523895, at *2 (W.D. Wash. Feb. 12, 2010) (finding notice by first class mail to be the best notice practicable under the circumstances).

## VII.   PLAINTIFF SHOULD BE APPOINTED CLASS REPRESENTATIVE AND PROPOSED CLASS COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Plaintiff also requests that the Court designate Plaintiff Veridian Credit Union as Class Representative to implement the terms of the Settlement. As detailed above, Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff's counsel Gary F. Lynch and Joseph P Guglielmo should be appointed as Class Counsel. Rule 23(g) enumerates four factors for evaluating the adequacy of proposed class counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and types of claims of the type asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

All of these factors militate in favor of appointing Mr. Lynch and Mr. Guglielmo as Class Counsel. They have devoted significant time and resources to prosecuting this action on behalf of Plaintiff and the proposed class. Lynch Decl. ¶ 17. Mr. Lynch and Mr. Guglielmo have extensive experience in class actions, particularly those involving financial institution card data breaches, as demonstrated by the numerous times their respective firms have been appointed to leadership positions in similar actions. *Id.* at Exs. B & C (Firm Resumes). Accordingly, Mr. Lynch and Mr. Guglielmo will adequately represent the interests of the Class and should be appointed as Class Counsel.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

## VIII.   CONCLUSION

2

3

4

For the foregoing reasons, Plaintiff respectfully requests that the Court certify the proposed class for settlement purposes, preliminarily approve the proposed settlement as fair and reasonable, authorize notice to the class, and schedule a final fairness hearing.

5

6

7

Respectfully submitted, this 26th day of April, 2019.

8

TOUSLEY BRAIN STEPHENS PLLC

9

By: */s/ Kim D. Stephens*
    Kim D. Stephens, WSBA #11984

10

    kstephens@tousley.com

11

By: */s/ Chase C. Alvord*
    Chase C. Alvord, WSBA #26080

12

    calvord@tousley.com

13

    1700 Seventh Avenue, Suite 2200
    Seattle, Washington 98101

14

    Telephone: 206.682.5600
    Fax: 206.682.2992

15

16

    Joseph P. Guglielmo, *pro hac vice*
    SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

17

    The Helmsley Building
    230 Park Avenue, 17th Floor

18

    New York, NY 10169
    Telephone: (212) 223-6444

19

    Facsimile:  (212) 223-6334
    jguglielmo@scott-scott.com

20

21

    Erin G. Comite, *pro hac vice*
    Stephen J. Teti, *pro hac vice*

22

    SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
    156 South Main Street

23

    P.O. Box 192
    Colchester, CT 06415

24

    Telephone: (860) 537-5537
    Facsimile:  (860) 537-4432

25

    ecomite@scott-scott.com
    steti@scott-scott.com

26

27

PLAINTIFF'S UNOPPOSED MOT. FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT (2:17-cv-00356-JLR) - 25

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   Gary F. Lynch, *pro hac vice*
    Kevin W. Tucker, *pro hac vice*
2   CARLSON LYNCH, LLP
    1133 Penn Avenue, 5th floor
3   Pittsburgh, PA 15222
    Telephone: (412) 322-9243
4   Facsimile:  (412) 231-0246
    glynch@carlsonlynch.com
5   ktucker@carlsonlynch.com
6
    Karen H. Riebel, *pro hac vice*
7   Kate Baxter-Kauf, *pro hac vice*
    LOCKRIDGE GRINDAL NAUEN P.L.L.P.
8   100 Washington Avenue S., Suite 2200
    Minneapolis, MN 55401
9   Telephone: (612) 339-6900
    Facsimile:  (612) 339-0981
10  khriebel@locklaw.com
    kmbaxter@locklaw.com
11
12
13  ***Attorneys for Plaintiff***
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

2

3

**CERTIFICATE OF SERVICE**

4

5

I hereby certify that on April 26, 2019, I electronically filed the foregoing with the Clerk

6

of the Court using the CM/ECF system which will send notification of such filing to all parties

7

registered on the CM/ECF system. All other parties (if any) shall be served in accordance with

8

the Federal Rules of Civil Procedure.

9

DATED at Seattle, Washington, this 26th day of April, 2019.

10

11

*/s/ Chase C. Alvord*

12

Chase A. Alvord WSBA #26080

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992