Honorable James L. Robart

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

VERIDIAN CREDIT UNION, on behalf of itself and a class of similarly situated financial institutions,

Plaintiff,

v.

EDDIE BAUER LLC,

Defendant.

No. 2:17-cv-00356-JLR

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

NOTE ON MOTION CALENDAR:

OCTOBER, 25, 2019

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## I.  INTRODUCTION

Plaintiff Veridian Credit Union ("Plaintiff" or "Veridian") moves under Rule 23(e) of the Federal Rules of Civil Procedure for Final Approval of the proposed class action Settlement entered into with Defendant Eddie Bauer LLC ("Defendant" or "Eddie Bauer").[1]  The Court preliminarily approved the Agreement between Veridian and Eddie Bauer on June 12, 2019.  ECF No. 165.  Since then, the Parties successfully implemented the Court-approved Notice Program and have received an overwhelmingly positive response to the Settlement from Settlement Class Members.  Plaintiff now moves the Court to: (1) certify the Settlement Class under Rules 23(b)(3) and 23(e) for settlement purposes; (2) approve the Settlement as fair, reasonable, and adequate; and (3) enter the Parties' proposed Final Approval Order and Judgment, filed herewith.  Separately, Plaintiff also is filing its Motion for an Award of Attorneys' Fee and Reimbursement of Expenses, which includes a request for a Service Award for Veridian.

## II.  FACTUAL BACKGROUND

### A.  History of the Litigation

Plaintiff alleged that in January 2016, hackers accessed Eddie Bauer's point of sale ("POS") systems and installed malicious software (often referred to as "malware") that infected every Eddie Bauer store in the United States and Canada (hereinafter, the "Cyber Attack").  Amended Class Action Complaint ("AC") (ECF No. 36) ¶29.  With this malware, hackers allegedly stole payment card data from Eddie Bauer's systems and sold it to other individuals who made fraudulent transactions on those payment cards.  *Id.* ¶¶7, 25, 29, 32, 35-36, 96-97.  Plaintiff, like the nationwide class of financial institutions, issued payment cards allegedly compromised in the Cyber Attack and suffered financial loss in connection with covering customers' fraud losses and reissuing the compromised cards.  *Id.* ¶¶8, 22, 96-98, 135.  Plaintiff brought suit against Eddie Bauer, filing the original complaint on March 7, 2017.  ECF No. 1.

Plaintiff alleged the Cyber Attack and Plaintiff's injury were the foreseeable result of Eddie Bauer's minimalistic data security measures – which were known within the company to be insufficient to protect against recognized threats – and refusal to implement industry-standard security measures because they cost too much.  AC ¶¶39-92.  Plaintiff brought this action for damages and declaratory and

---

[1]    Unless otherwise defined herein, all capitalized terms have the same definitions as those set forth in the Settlement Agreement and Release ("Agreement" or "SA") (ECF No. 164-1).

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

injunctive relief for Eddie Bauer's negligence and violations of the Washington Consumer Protection Act ("CPA"), RCW §19.86, and data breach notification law, RCW §19.255.020.

On November 9, 2017, the Court largely denied Eddie Bauer's Motion to Dismiss. ECF No. 69. Thereafter, the Parties engaged in significant discovery and motion practice related to discovery disputes. Joint Decl. ¶¶7-11.[2] Fact discovery essentially was complete but for matters related to the protracted discovery disputes. Plaintiff reviewed more than 175,000 pages of Eddie Bauer documents, analyzed several iterations of Eddie Bauer's 40,000+ entry privilege log, deposed eight former and current Eddie Bauer employees, and examined two corporate representatives designated pursuant to Rule 30(b)(6). *Id.* ¶¶7-8, 11. Plaintiff also responded to 164 document requests, produced tens of thousands of pages of documents, and sat for a Rule 30(b)(6) deposition. *Id.* Further, Plaintiff served 11 Rule 45 subpoenas, met and conferred with counsel for each subpoena recipient, reviewed tens of thousands of pages of documents, and deposed three third-party witnesses. *Id.* ¶10. Given the number of discovery issues between the Parties, on October 10, 2018, the Court appointed a Special Master to resolve these matters (ECF No. 139), which included a dispute relating to the sufficiency of Eddie Bauer's privilege log and Plaintiff's responses to certain document requests. *Id.* ¶9. Prior to agreeing to mediation, Plaintiff also was in the process of drafting its motion for class certification and finalizing expert reports in support of class certification. *Id.* ¶12.

### B.    Negotiations and Settlement

The proposed Settlement is the result of good faith, arm's-length negotiations. *Id.* ¶13. The Parties engaged in multiple direct telephonic and in-person discussions about a possible resolution of the action. *Id.* On January 9, 2019, the Parties agreed to engage in a mediation. *Id.* The Parties then participated in a full-day, in-person mediation session before Hon. Jay C. Gandhi (Ret.) ("Judge Gandhi") on February 15, 2019, in Los Angeles, California. *Id.* Prior to the mediation, the Parties exchanged detailed confidential mediation statements setting forth their respective positions as to liability and damages. *Id.* At the conclusion of a lengthy series of negotiations that occurred throughout the day under the direction

---

[2]    All "Joint Decl." references are to the Joint Declaration of Gary F. Lynch and Joseph P. Guglielmo filed in support hereof and in support of Plaintiff's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT – 2
USDC WD WA NO. 2:17-cv-00356-JLR

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

of Judge Gandhi, the Parties were able to reach agreement on the core terms necessary to resolve the case on a classwide basis. *Id.* The Parties did not discuss attorneys' fees, costs, or expenses with each other prior to reaching agreement on the essential terms of the Settlement. *Id.* ¶14. The Parties then formalized the terms of their proposed Settlement in a full agreement, which is filed at ECF No. 164-1.

### C. Preliminary Approval

On April 26, 2019, Plaintiff filed its unopposed motion for preliminary approval of the Settlement, provisional certification of the Settlement Class, and approval of the proposed Notice Program. ECF No. 163. The Court granted the motion and issued a Preliminary Approval Order on June 12, 2019, provisionally certifying the proposed Settlement Class and designating Gary F. Lynch of Carlson Lynch LLP and Joseph P. Guglielmo of Scott+Scott Attorneys at Law LLP as Class Counsel. ECF No. 165 at 1-2 (hereinafter, "Order").

## III. TERMS OF THE PROPOSED SETTLEMENT

### A. The Settlement Class

In the Order, the Court provisionally certified the following "Settlement Class" under Fed. R. Civ. P. 23(b)(3):

> All banks, credit unions, financial institutions, and other entities in the United States (including its Territories and the District of Columbia) that issued Alerted on Payment Cards. Excluded from the Settlement Class is the judge presiding over this matter and any members of his judicial staff, Eddie Bauer, and persons who timely and validly request exclusion from the Settlement Class.

Order at 1-2; *see also* SA ¶35. For purposes of the Settlement and interpreting the Settlement Class definition, the term "Alerted on Payment Card" means any payment card (including debit and credit cards) that was identified as having been at risk as a result of the Cyber Attack in an alert or similar document by Visa, MasterCard, Discover, or JCB, including, without limitation: (i) in an alert in the Visa US-2016-0665 series (*e.g.*, US-2016-0665a-PA, US-2016-0665b-PA, US-2016-0665c-PA, US-2016-0665d-PA, US-2016-0665e-IC, US-2016-0665f-IC, US-2016-0665g-IC, US-2016-0665h-IC); (ii) in an alert in the MasterCard ADC001253-16 series; (iii) in an alert in the Discover DCA-USA-2016-6710 series; or (iv) in an alert or similar document by JCB similar to the foregoing Visa and MasterCard alerts. SA ¶1. Based on information obtained in discovery, there are approximately 1.4 million Alerted on Payment Cards,

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT – 3
USDC WD WA NO. 2:17-cv-00356-JLR

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

issued by approximately 4,315 financial institutions (the Settlement Class Members).  Joint Decl. ¶16; Amundson Decl. ¶5.[3]

### B.    Benefits to the Settlement Class

Under the proposed Settlement, Eddie Bauer agreed to pay Settlement Class Members a minimum total of $1,000,000 and a maximum total of $2,800,000.  SA ¶33(a).  The monetary relief will be distributed on a "claims made" basis.  Each Settlement Class Member that submits an Approved Claim will receive $2.00 per Alerted on Payment Card.[4]  *Id.*

Eddie Bauer also has agreed to injunctive relief for a period of two years from the Effective Date. Consistent with its obligations to comply with the Payment Card Industry Data Security Standards (PCI DSS), Eddie Bauer will maintain a comprehensive information security program that is reasonably designed to protect the security, integrity, and confidentiality of payment cardholder data.  This compliance will continue to contain administrative, technical, and physical safeguards consistent with the PCI DSS, which are intended to protect the cardholder data environment.  These measures are described in detail in SA ¶42.  These measures will be maintained for at least two years following the Effective Date of the Settlement, subject to reasonable exceptions.  *Id.* ¶43.  Eddie Bauer has represented that the costs associated with maintaining these provisions and compliance with PCI DSS since the Cyber Attack, combined with the costs of these measures for at least two years, exceeds $5 million.  *Id.* ¶¶33(c), 42.

### C.    Releases

In exchange for the consideration above, Plaintiff and the Settlement Class Members who did not timely and validly exclude themselves from the Settlement will be deemed to have released Eddie Bauer and related persons and entities from claims arising from, or related to, the Cyber Attack at issue in this Litigation.  *Id.* ¶¶61-62, 64.  In turn, Eddie Bauer and its affiliated persons and entities will also release any potential claims or counterclaims against Plaintiff, Settlement Class Members, and their affiliated entities relating to the initiation, prosecution, or settlement of this Litigation.  *Id.* ¶63.

---

[3]    All "Amundson Decl." references are to the Declaration of Christopher D. Amundson filed in support hereof.

[4]    If the value of all Approved Claims had been less than $1,000,000 (using the $2.00 per-card rate), then the per-card payment amount would have been increased *pro rata* until the total value of claims reached $1,000,000.  *Id.*  Based on the high claims rate, the value of claims made to date likely exceeds $1,000,000, so this scenario likely will not occur.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**D.      Costs of Settlement Administration, Attorneys' Fees and Expenses, and Service Award**

In addition to the Settlement Consideration available for direct distribution to claiming Settlement Class Members, Eddie Bauer agreed to pay up to $2,000,000 to cover the following items: (1) Costs of Settlement Administration; (2) any Court-approved Service Award to the Plaintiff, not to exceed $10,000; and (3) any Court-approved attorneys' fees, costs, and expenses. *Id.* ¶¶33(b), 39(b), 40, 66. The effectiveness of the Agreement is not contingent on the Court's awarding of the full amounts of the requested Service Award or attorneys' fees, costs, or expenses. *Id.* ¶67. Plaintiff is filing a separate application requesting attorneys' fees, costs, and a Service Award for Plaintiff.

## IV.      RESULTS OF THE NOTICE AND CLAIM PROCESS

### A.      The Parties Implemented the Court-Approved Notice Program

The Parties implemented the Court-approved Notice Program in coordination with the approved Settlement Administrator, Analytics Consulting, LLC ("Analytics"). Order at 3-4. Using records obtained by Class Counsel through third-party discovery, Analytics created a database list of Settlement Class Members and verified the addresses using multiple methods. Amundson Decl. ¶¶4-5. This resulted in mailable address records for 4,315 Settlement Class Members. *Id.* ¶5. Analytics caused the Court-approved Notice and Claim Forms to be sent via USPS first-class mail on July 12, 2019. *Id.* ¶6 & Ex. B.

As of September 19, 2019, USPS has returned 15 Notices with an updated address for such Settlement Class Members (the period in which USPS automatically forwards the Notice had expired). *Id.* ¶7. Analytics re-mailed the Notices to these Settlement Class Members at their updated addresses. *Id.* An additional 232 Notices were returned by USPS as undeliverable. *Id.* Of these undeliverable Notices, Analytics located six new addresses through a third-party commercial data source, Experian, and re-mailed the Notices to those six Settlement Class Members at the updated addresses. *Id.* Analytics estimates that the Notice was successfully delivered to over 94% of the Settlement Class. *Id.* On July 15, 2019, Analytics also caused the summary form of the Notice to be published in the online edition of *ABA Banking Journal*, a digital publication typically read by bank and credit union executives, which ran for 30 consecutive days. *Id.* ¶8 & Ex. C.

With input from counsel for the Parties, Analytics established a Settlement Website, operational as of July 12, 2019, where Settlement Class Members could obtain important information about the

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Settlement and submit/upload Claim Forms electronically.  *Id.* ¶10.  The website received visits from 5,579 unique users, and Analytics resolved 118 email exchanges with Settlement Class Members.  *Id.* ¶¶10-11.  Analytics also established a toll-free phone number to provide Settlement Class Members with additional information regarding the Settlement through both automated messages and live call center representatives.  *Id.* ¶9.  The toll-free number became operational on July 12, 2019, and the number has received 57 phone calls and 20 requests to speak with a customer service representative.  *Id.*

In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715(b), Analytics served Notice of the proposed Settlement on the appropriate state and federal authorities on June 19, 2019. *Id.* ¶3 & Ex. A.

### B.    Claims, Requests for Exclusions, and Objections to Date

Under the schedule established by the Preliminary Approval Order, the deadline for Settlement Class Members to mail a request for exclusion from the Settlement was September 10, 2019, and the deadline for Settlement Class Members to submit claims is October 10, 2019.  Order at 4, 9-10.

As of September 19, 2019, a total of 1,555 Claim Forms have been submitted by Settlement Class Members.  Amundson Decl. ¶12.  This represents a claims rate of 36%, which, in the experience of the Settlement Administrator and Class Counsel, is an exceptional claims rate for this type of settlement.  *Id.*; Joint Decl. ¶17.  Based on this claims rate, it is expected that Settlement Class Members will receive $2.00 per Claimed-on Card.  SA ¶33(a).

Only one request for exclusion was received by Analytics.  Amundson Decl. ¶13 & Ex. D.  The deadline for Settlement Class Members to object to the Settlement is October 4, 2019.  As of the date of this filing, Class Counsel is unaware of any objections.  Joint Decl. ¶17.  If any objections are filed by the deadline, Plaintiff will respond, if necessary, by October 18, 2019.

## V.    THE SETTLEMENT WARRANTS FINAL APPROVAL

The Ninth Circuit recognizes the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277 (9th Cir. 1992).  The strong preference for class action settlements is precipitated by the overwhelming uncertainties of the outcome, expense, management, and difficulties in proof inherent in class action lawsuits.  *See Van Bronkhorst v. Safeco*

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT – 6
USDC WD WA NO. 2:17-cv-00356-JLR

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (noting that class action settlements are especially favorable in light of "an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense").

Approval of a class action settlement "take[s] place over three stages. First, the parties present a proposed settlement asking the Court to provide preliminary approval for both (a) the settlement class and (b) the settlement terms." *Rinky Dink Inc. v. Elec. Merch. Sys. Inc.*, No. C13-1347 JCC, 2015 WL 11234156, at *1 (W.D. Wash. Dec. 11, 2015).[5] "Second, if the court does preliminarily approve the settlement and class, (i) notice is sent to the class describing the terms of the proposed settlement, (ii) class members are given an opportunity to object or opt out, and (iii) the court holds a fairness hearing at which class members may appear and support or object to the settlement." *Id.* "Third, taking account of all of the information learned during the aforementioned processes, the court decides whether or not to give final approval to the settlement and class certification." *Id.*; *see also In re Toys "R" Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 448 (C.D. Cal. 2014).

## A.    The Multi-Factor Test Supports Final Approval

The "universally applied standard" courts use to determine whether to grant final approval is "whether the settlement is fundamentally fair, adequate, and reasonable." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *see also* Fed. R. Civ. P. 23(e)(2) ("If the [proposed settlement] would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate."). At the final approval stage, a court considers a settlement in light of a non-exhaustive list of factors, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[6] Furthermore, approval under amended Rule 23(e)(2) requires that courts take into consideration the following factors: (1) whether "the

---

[5]    Unless otherwise indicated, all emphasis is added and internal citations and quotation marks are omitted.

[6]    The seventh factor is neutral here as there is no governmental participant.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

class representatives and class counsel have adequately represented the class"; (2) whether the settlement "was negotiated at arm's length"; (3) whether "the relief provided for the class is adequate"; and (4) whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D); *see also In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 536661, at *8 (N.D. Cal. Feb. 11, 2019).

For the reasons set forth in detail below, the proposed Settlement is fundamentally fair, adequate, and reasonable – meeting every criterion for Final Approval.

### 1. The Strength of Plaintiff's Case Compared to the Risk, Complexity, Costs, and Likely Duration of Further Litigation, Including the Risk of Maintaining a Class Action

Plaintiff would have faced significant risks in litigating this case through trial and maintaining a class action. Although the Court denied in part Eddie Bauer's Motion to Dismiss and permitted Plaintiff's primary negligence claim to proceed, numerous procedural hurdles and risks remained before Plaintiff or Settlement Class Members could recover at trial. Class actions initiated by financial institutions against merchants after data breaches are a relatively new form of litigation. While some cases have ended in settlements, such as *Target*,[7] *Home Depot*,[8] and *Wendy's*,[9] some have been dismissed in whole or in substantial part, *e.g.*, *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 817-18 (7th Cir. 2018); *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288 (D. Colo. 2017), and class certification has been denied in others. *E.g.*, *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (denying class certification because necessity of individualized inquiries regarding causation, comparative negligence, and damages precluded a finding of predominance). To date, no similar case has ever gone to trial or ended in favorable summary judgment for a financial institution plaintiff.

Accordingly, although Plaintiff is confident in the strength of its case against Eddie Bauer and the likelihood of success at each stage, the outcome is nonetheless uncertain. Continued litigation would be

---

[7] *In re: Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522(PAM), 2016 WL 2757692 (D. Minn. May 12, 2019).

[8] *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016).

[9] *First Choice Fed. Credit Union v. Wendy's Co.*, No. 2:16-cv-00506-NBF-MPK, 2019 WL 948400 (W.D. Pa. Feb. 26, 2019).

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

complex and likely expensive, particularly in light of the type of technical discovery and expert testimony that would be required for Plaintiff to establish that Eddie Bauer breached an identifiable standard of care. Moreover, even if Plaintiff was successful in the class certification and trial stages in the district court, there would very likely be one or more lengthy appeals, including potentially an interlocutory appeal under Fed. R. Civ. P. 23(f). The degree of uncertainty supports Final Approval of the proposed Settlement.

### 2. The Amount Recovered Through Settlement, Method of Distribution, and Equal Treatment of Settlement Class Members

This Settlement provides significant relief to the Settlement Class and represents a fair, reasonable, and adequate recovery in light of the risks of further litigation. When considering whether "the relief provided for the class is adequate," amended Rule 23(e)(2)(C) requires the Court to take into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; [and] (iii) the terms of any proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(i)-(iii) (eff. Dec. 1, 2018).[10] "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).

The Settlement provides substantial relief to the Settlement Class. In light of the high claims rate, Settlement Class Members who submit claims likely will receive $2.00 per Alerted on Payment Card. SA ¶33(a). This amount is on top of the assessments that Eddie Bauer paid to certain card brands, which the card brands then distributed to the financial institutions that had eligible payment cards that were identified as potentially compromised in this Cyber Attack through card brand alerts. Joint Decl. ¶16. In addition, Eddie Bauer has agreed to implement certain security enhancements for at least two years, which Eddie Bauer has spent or will spend approximately $5 million to implement and will benefit Settlement Class Members by reducing the risk of a similar security breach in the future. SA ¶¶41-43. This relief compares

---

[10] Rule 23(e) also requires the Court to consider "any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(iv). Other than the Agreement at issue, and the separate agreement referenced in SA ¶70 regarding Eddie Bauer's discretion to terminate the Agreement in the event that Settlement Class Members representing a certain number of Alerted on Payment Cards elect to opt-out of the Settlement Class, there are no other agreements to disclose. Joint Decl. ¶21.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT – 9
USDC WD WA NO. 2:17-cv-00356-JLR

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

favorably with settlements obtained in similar litigation, namely the settlements negotiated by financial institution plaintiffs in *Target* and *Home Depot*. Those settlements – both of which received final approval – provided financial institutions with $1.50 and $2.00 fixed per-card recovery, respectively, without documentation of loss (with an option to obtain a percentage of documented losses). *See In re: Target Corp. Customer Data Sec. Breach Litig.*, No. 0:14-md-02522, ECF No. 747-1, Ex. A at 4-5 (D. Minn. Apr. 11, 2016); *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583, ECF No. 336-1 at 25 (N.D. Ga. Aug. 23, 2017). The per-card relief offered by this Settlement is reasonable in light of these prior results in similar cases.

Settlement Class Members that file an Approved Claim will receive a Cash Payment Award per Claimed-On Card without having to provide supporting documentation or prove their losses. SA ¶39(a); *id.*, Ex. 1 ¶¶2, 2.1. The amount of the cash payment likely will be $2.00 per Claimed-On Card. *Id.*, Ex. 1 ¶¶2.1, 4.2. This Distribution Plan is straightforward and treats all Settlement Class Members identically.

The Agreement authorizes Plaintiff to seek a Service Award in an amount no greater than $10,000 for its service to the Settlement Class in bringing and pressing the lawsuit. *Id.* ¶66. Importantly, Plaintiff's Service Award is to be paid separate and apart from the Settlement Class award, and any reduction of the Service Award by the Court shall not affect the rest of the Settlement. *Id.* ¶67. The Parties negotiated this aspect of the Agreement only after reaching agreement on all other material terms of the Settlement. *Id.* ¶68. In all other respects, the Agreement treats all Settlement Class Members, including Plaintiff, identically and gives all Settlement Class Members the same opportunity to receive payments using the same distribution method. *Id.* ¶39(a); *id.*, Ex. 1 ¶¶2, 2.1.

The Ninth Circuit recognizes that service awards given to named plaintiffs are "fairly typical" in class actions. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Incentive awards serve "to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59. To determine whether a service award is permissible, courts will consider "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Cir. 2003)). Service awards are less likely to create conflicts between the named plaintiff and absent class members when: (1) there is no *ex ante* agreement between the class representative and class counsel regarding the award; (2) the discretion to make an award is left to the district court; and (3) the awards are not conditioned on the class representative's support for the settlement agreement. *Id.* at 943.

Here, the requested Service Award does not create a conflict of interest between Plaintiff and absent Settlement Class Members because the Agreement will remain in full force and effect, notwithstanding any reduction of the Service Award. *See* SA ¶67. Veridian's requested Service Award was not predicated on the existence of any special treatment or promise from Class Counsel. Joint Decl. ¶20. The basis for such award is purely to compensate Plaintiff for its time and efforts in initiating the lawsuit, staying abreast of all aspects of this Litigation, cooperating in discovery, producing thousands of documents, sitting for deposition, participating in the Settlement discussions, and fairly and adequately protecting the interests of the absent Settlement Class Members. *Id.* The award is also small compared to the overall Settlement relief. Thus, the Service Award does not constitute preferential treatment.

These factors support approval of the Settlement.

### 3.      The Stage of Proceedings and Extent of Discovery Completed

The parties must have "sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). This information can be obtained through formal or informal discovery. *See Clesceri v. Beach City Investigations & Protective Servs.*, *Inc.*, No. CV-10-3873-JLS (RZx), 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011).

As discussed above, the Parties engaged in significant motion practice and discovery, and as a result, they were well-positioned to evaluate the strengths and weaknesses of the positions when negotiating the Settlement. *See* §II.A, *supra*. The Court already ruled on the Motion to Dismiss, leading to Plaintiff's amended Complaint. And, fact discovery essentially was complete and Plaintiff had numerous consultations with its experts in the lead up to filing a motion for class certification. *Id.* As a result of the substantial discovery and motion practice and expert work that already had taken place in this Litigation at the time of Settlement, the Parties were very familiar with the key factual and legal issues that awaited resolution in the remaining stages of this Litigation. They were able to use this knowledge

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

to appropriately balance the potential risks and rewards of proceeding and reached an informed compromise. This factor supports Final Approval.

### 4.    Experience and Views of Counsel

As set forth in their respective firm resumes, Class Counsel has extensive experience in complex class action litigation generally and representing financial institutions in data breach class actions specifically. Joint Decl. ¶2; Lynch Decl., Ex. C; Scott Decl., Ex. D.[11] For example, Mr. Lynch and Mr. Guglielmo have served in a leadership capacity in data breach class actions on behalf of financial institutions in cases such as *Home Depot*, *Target*, and *Wendy's*, among others. Lynch Decl., Ex. C; Scott Decl., Ex. D. Class Counsel have considered: (1) the complexities of this Litigation; (2) the risks and expense of continuing this Litigation through discovery, class certification, summary judgment, and trial against Eddie Bauer; and (3) the likely appeal(s) if Plaintiff does prevail at trial or earlier stages. After weighing these against the guaranteed recovery to the Settlement Class, and what Class Counsel believe to be the significant monetary benefits to the Settlement Class, Class Counsel firmly believe the Settlement represents a desirable resolution of this Litigation. Joint Decl. ¶¶3, 22.

### 5.    Reaction of Settlement Class Members

The results of the Notice Program and Claims process demonstrate that the reaction of Settlement Class Members has been overwhelmingly favorable. To date, approximately 36% of Settlement Class has submitted claims. In the experience of Class Counsel and the Settlement Administrator, this is a very high claims rate for this type of case. Joint Decl. ¶17; Amundson Decl. ¶12. This suggests that the Settlement Class believes the relief offered is valuable and worth submitting a claim in order to obtain. There has been only one request for exclusion from the Settlement and no objections as of the time of this submission, with only 14 days remaining until the October 4, 2019, deadline to object. Joint Decl. ¶17; Amundson Decl. ¶13.

In sum, each of the foregoing factors weighs in favor of granting Final Approval.

---

[11]    All "Lynch Decl.," "Scott Decl.," and "Slessor Decl." references are to the Declarations of Gary F. Lynch, Daryl F. Scott, and Gregory Slessor, respectively, which are concurrently filed in support hereof and in support of Plaintiff's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**B.    Involvement of a Neutral Mediator and Reduced Risk of Collusion**

As an additional consideration, the Ninth Circuit instructs courts to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)).  "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Here, there is no evidence that this Settlement was founded in collusion or fraud.  Rather, an agreement was reached after dispositive motions practice, significant discovery, and an in-person mediation session facilitated by a highly experienced mediator, Judge Gandhi.  Joint Decl. ¶13.  Moreover, both Parties were represented by counsel highly experienced in complex class litigation, which lent to the careful consideration of all strengths and weaknesses in order to achieve efficient resolution.  Thus, the Parties were well-versed with the relevant law, challenges present in calculating damages on a classwide basis, and risks of continued litigation and recovery.  Further, the Settlement Class Members here are sophisticated financial institutions, most of which have their own in-house counsel or regular outside counsel on retainer.  The ability of Settlement Class Members to readily access legal advice from attorneys other than Class Counsel operates as an additional safeguard against any risk of a collusive or unfair settlement.  Accordingly, this consideration also counsels in favor of finding the Settlement to be fair, reasonable, and adequate.

## VI.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

This Court provisionally certified the Settlement Class in the Preliminary Approval Order, finding that the requirements of Rules 23(a) and (b)(3) were met.  *See* Order at 1-2.  Since that time, there have been no developments that would alter this conclusion.  The Settlement Class should now be finally certified.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT – 13
USDC WD WA NO. 2:17-cv-00356-JLR

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

### A. The Proposed Class Satisfies the Rule 23(a) Requirements

#### 1. Numerosity

Numerosity is clearly established here. The Parties conducted pre-mediation discovery and investigation, wherein the Parties confirmed through third-party discovery that there are approximately 1.4 million potential Alerted on Payment Cards and approximately 4,315 Settlement Class Members. Joint Decl. ¶16; Amundson Decl. ¶5. The documents obtained in discovery allowed Class Counsel and the Settlement Administrator to specifically identify each Settlement Class Member that issued Alerted on Payment Cards and its last known address. *Id.* Accordingly, because the Settlement Class Members are certainly too numerous to join as plaintiffs, the numerosity requirement is met.

#### 2. Commonality

Commonality is satisfied if "there are any questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2); *see Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (noting all that is required is a "*single* significant question of law or fact."); *Hanson v. MGM Resorts Int'l*, No. 16-cv-001661-RAJ, 2018 WL 3630284, at *2 (W.D. Wash. July 31, 2018) (same). The inquiry regarding commonality involves whether Plaintiff can show a common contention such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, the Settlement Class Members share common legal and factual questions vis-à-vis Eddie Bauer's liability, for instance, whether Eddie Bauer owed Settlement Class Members a duty to use reasonable payment card security practices, whether the duty was breached, and whether Eddie Bauer's actions caused Settlement Class Members' alleged damages. As to damages, the Settlement Class Members each suffered the same general forms of injury: they all issued payment cards that were alerted-on as potentially compromised in the Cyber Attack and incurred costs related to reissuing the affected cards or reimbursing customers for fraudulent transactions on the card accounts. AC ¶¶8, 22, 96-98, 135. These questions suffice to satisfy the commonality prong.

#### 3. Typicality

Typicality is satisfied if the class representative's claims or defenses are typical to those of the class. Fed. R. Civ. P. 23(a)(3). The Ninth Circuit applies the typicality requirement liberally:

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

"representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016).

As addressed immediately above, Plaintiff's claims are typical to those of the Settlement Class because they are based upon the same facts and the same legal and remedial theories as those of the Settlement Class. Plaintiff's and Settlement Class Members' claims arise from Eddie Bauer's alleged failure to maintain adequate payment card data security measures at its retail stores. The exposure of Plaintiff's and the Settlement Class's payment card data occurred through the same mechanism during the same time period. Every Settlement Class Member suffered the same varieties and types of risks and losses as a result of the Cyber Attack, and the only notable variation among Settlement Class Members is the amount of damages each one suffered.

### 4. Adequacy

Adequacy is satisfied if the class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit utilizes "two questions [to] determine[] legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiff is an adequate class representative because it shares common goals with Settlement Class Members of pursuing litigation to obtain recovery for Cyber Attack-related losses and to incentivize merchants to improve payment card data security. There is no evidence in the record that Plaintiff or its counsel harbor any interest antagonistic to the interests of the Settlement Class. Joint Decl. ¶20. Plaintiff has been proactive in this Litigation, participating in extensive discovery efforts and maintaining close contact with Class Counsel regarding the progress of this Litigation. *Id.* ¶19; Slessor Decl. Class Counsel and the other Plaintiff's counsel of record also have been diligent in their litigation endeavors on behalf of the Settlement Class. Joint Decl. ¶¶4-16, 18. Therefore, the adequacy requirement is satisfied.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT – 15
USDC WD WA NO. 2:17-cv-00356-JLR

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

B.    **The Proposed Class Satisfies the Rule 23(b)(3) Requirements**

Class actions under Rule 23(b)(3) must also satisfy the following two requirements, which are commonly referred to as "predominance" and "superiority," respectively: (1) "the questions of law and fact common to class members predominate over any questions affecting only individual members"; and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff has satisfied both of these requirements.

1.    **Predominance**

The predominance prong turns on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Although predominance is inherently related to commonality in that it assumes a prerequisite of common issues of law and fact, "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Id*. Where the core question driving the litigation would "require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate[.]" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).

Individualized damage variations among class members do not by themselves preclude a finding of predominance. *See Hanson*, 2018 WL 3630284, at *3. First, a class may be certified for liability purposes only, leaving individual damages calculations to subsequent proceedings. *See Taha v. Cty. of Bucks*, 862 F.3d 292, 309 (3d Cir. 2017); W. Rubenstein, Newberg On Class Actions §4:54, 206-08 (5th ed. 2012). Second, a plaintiff class may prove classwide damages through use of representative evidence and statistical modeling, provided that the methodology offered is mathematically sound and comports appropriately with the plaintiffs' liability theory. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047-49 (2016); *Comcast Corp. v. Behrend*, 569 U.S. 27, 35-37 (2013). Apportionment and disbursement of the classwide damages to individual class members can be accomplished at a later stage without undermining the propriety of class certification during earlier phases. *See Tyson Foods*, 136 S. Ct. at 1049-50.

The predominate legal and factual issues in this Litigation concern the nature of the Cyber Attack and Eddie Bauer's degree of responsibility. The most significant remaining issues to be litigated or tried, with respect to liability, were the extent of Eddie Bauer's legal duty to Plaintiff to protect payment card

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

data; whether Eddie Bauer breached the duty of reasonable care; whether Eddie Bauer's acts or omissions were the proximate cause of Plaintiff's injuries; and proof of damages. In Plaintiff's view, all of these issues could have been resolved on a classwide basis, with little to no emphasis on unique circumstances of any individual Plaintiff or Class Member. *See*, *e.g.*, *In re: Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 486-89 (D. Minn. 2015). These issues predominate, and the Settlement and Distribution Plan proposed by Plaintiff ensure that individualized damage calculations do not pose a problem. Settlement Class Members will receive fixed distributions from the settlement fund based on the number Claimed-On Cards, a methodology that is objective, easy to calculate, and offers fair and equal treatment to all Settlement Class Members. SA, Ex. 1 ¶¶2.1, 4.2.

### 2.  Superiority

Superiority examines whether the class action device "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy. Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010) (alteration in original). In the settlement context, manageability of the class action device is not a concern. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Although Settlement Class Members collectively suffered significant damages as a result of the Cyber Attack, those losses are distributed among several thousand card-issuing financial institutions. Joint Decl. ¶16. Settlement Class Members who issued only a few Alerted on Payment Cards will have no incentive to litigate against Eddie Bauer individually, as their damages may only be a few hundred dollars. Even for larger issuers, the distributions offered by this Settlement likely provide better net recoveries than the Settlement Class Members could obtain by suing Eddie Bauer individually, after costs of litigation are considered. *See Hanson*, 2018 WL 3630284, at *3 (finding superiority prong met where individual class members' damages would be up to $1,000 because "many members would most likely refrain" from individual litigation due to disparity between litigation costs and expected recoveries). Accordingly,

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT – 17
USDC WD WA NO. 2:17-cv-00356-JLR

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

because each Settlement Class Members' claim is common to the Settlement Class and relatively small in amount, a class action is the superior method for efficiently adjudicating Plaintiff's claims.

## VII. PLAINTIFF SHOULD BE CONFIRMED AS SETTLEMENT CLASS REPRESENTATIVE AND PROPOSED CLASS COUNSEL SHOULD BE CONFIRMED AS CLASS COUNSEL

Plaintiff also requests that the Court formally and finally designate it as the Settlement Class Representative to implement the terms of the Settlement.  As detailed above, Plaintiff will fairly and adequately represent and protect the interests of the Settlement Class.  *See* §VI.A.4., *supra*.  Plaintiff's counsel, Mr. Lynch and Mr. Guglielmo, should be formally and finally appointed as Class Counsel.  Rule 23(g) enumerates four factors for evaluating the adequacy of proposed class counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims of the type asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources counsel will commit to representing the class[.]"  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

All of these factors militate in favor of appointing Mr. Lynch and Mr. Guglielmo as Class Counsel. They have devoted significant time and resources to prosecuting this action on behalf of Plaintiff and the proposed Settlement Class.  Joint Decl. ¶¶4-16; Lynch Decl. & Exs. A-B; Scott Decl. & Exs. A-B.  Mr. Lynch and Mr. Guglielmo have extensive experience in class actions, particularly those involving financial institution card data breaches, as demonstrated by the numerous times their respective firms have been appointed to leadership positions in similar actions.  Lynch Decl., Ex. C; Scott Decl., Ex. D. Accordingly, Mr. Lynch and Mr. Guglielmo have already and will continue to adequately represent the interests of the Settlement Class and should be appointed as Class Counsel.

## IX. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court finally certify the proposed Settlement Class for settlement purposes, finally approve the proposed Settlement as fair, adequate, and reasonable, and enter the proposed Final Order and Judgment submitted herewith.

Respectfully submitted, this 20th day of September, 2019.

TOUSLEY BRAIN STEPHENS PLLC

By: */s/ Kim D. Stephens*
Kim D. Stephens, WSBA #11984

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT – 18
USDC WD WA NO. 2:17-cv-00356-JLR

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

kstephens@tousley.com

By: /s/ Chase C. Alvord
Chase C. Alvord, WSBA #26080
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 682-5600
Facsimile:  (206) 682-2992
calvord@tousley.com

Joseph P. Guglielmo (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com

Erin Green Comite (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile:  (860) 537-4432
ecomite@scott-scott.com

Gary F. Lynch (*pro hac vice*)
Kevin W. Tucker (*pro hac vice*)
CARLSON LYNCH, LLP
1133 Penn Avenue, 5th floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile:  (412) 231-0246
glynch@carlsonlynch.com
ktucker@carlsonlynch.com

Karen H. Riebel (*pro hac vice*)
Kate Baxter-Kauf (*pro hac vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile:  (612) 339-0981
khriebel@locklaw.com
kmbaxter@locklaw.com

Arthur M. Murray
MURRAY LAW FIRM
650 Poydras St., Suite 2150
New Orleans, LA 70130
Telephone: (504) 525-8100
Facsimile: (504) 284-5249
amurray@murray-lawfirm.com

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

Brian C. Gudmundson
ZIMMERMAN REED, LLP

2

1100 IDS Center, 80 South 8th St.
Minneapolis, MN 55402

3

Telephone: (612) 341-0400
Facsimile: (612) 341-0844

4

brian.gudmundson@zimmreed.com

5

Bryan L. Bleichner
CHESTNUT CAMBRONNE PA

6

17 Washington Avenue North, Suite 300
Minneapolis, MN 55401

7

Telephone: (612) 339-7300
Facsimile: (612) 336-2921

8

bbleichner@chestnutcambronne.com

9

***Attorneys for Plaintiff***

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on September 20, 2019, I electronically filed the foregoing with the Clerk of

3  the Court using the CM/ECF system which will send notification of such filing to all parties registered on

4  the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of

5  Civil Procedure.

6      DATED at Seattle, Washington, this 20th day of September, 2019.

7                              By: _/s/ Chase C. Alvord_____
                                Chase A. Alvord WSBA #26080
8                               TOUSLEY BRAIN STEPHENS PLLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992